## PALMER SOUTHWORTH AND OTHERS *vs.* ELISHA T. SMITH AND OTHERS.

A bill in equity brought by the major owners of a vessel for the purpose of compelling the minor owners, who were in possession, to deliver her up to the plaintiffs, and to render an account, alleged that the defendants refused to deliver her to the plaintiffs, although they had demanded her, and that the defendants had converted her, and threatened to send her out of the state; but did not allege that the defendants had used the vessel, or had received more than their share of her earnings, or had refused to account, nor that the defendants were unable to respond in damages, nor that the plaintiffs desired possession of her for the purpose of employing her in commerce, nor that the defendants had refused to so employ her. Held, on demurrer, that the bill was insufficient as a bill for an account; and that as a bill for an injunction and to obtain the possession of the vessel, it showed no facts warranting the interposition of a court of equity, even if such a court, on a bill properly framed, would have had jurisdiction of the matter.

Whether the courts of equity in this state have to any extent concurrent jurisdiction with the admiralty courts of the United States in matters of equitable maritime jurisdiction : *Quere.*

The rules established in courts of admiralty, under which a part of the owners of a vessel may compel the other part owners in possession to surrender to them the possession of the vessel, are adopted for the purpose of providing that the vessel shall not be kept idle, where any of the owners desire that she should be employed in commerce; and it is indispensable therefore that it should appear that the part owners who seek the possession of the vessel desire it for the purpose of so employing her; and it would seem to be equally necessary that it should appear that the other part owners refuse to so employ her

Where personal property is owned by several persons in common, all the owners are equally entitled to the possession of it, and where one of them is in the actual possession he has a right to maintain that possession against the others    In an ordinary case the only remedy of an owner out of possession is to take possession when a fit opportunity presents itself.

*It seems* however that in such a case, if the property was in danger of being destroyed or injured by the party in possession and such party was unable to respond in damages, a court of equity might require him to give security that the property should not be destroyed or injured, and might perhaps even require the delivery of the possession to the other owners.

BILL in equity, brought by part owners of a vessel against the other part owners for an injunction, the possession of the vessel, and an account.   The suit was brought originally to the city court of the city of Hartford.

The bill alleged that the petitioners were the owners of nine-sixteenth parts of the schooner A. C. Douglas, a schooner belonging to the port of Hartford; that the respondents were the owners of seven-sixteenth parts of the same; that the petitioners, as such major owners, were entitled to the possession and control of said schooner; and that at and within said city of Hartford, on the 25th day of May, 1858, and while said schooner was within the limits of said city, the petitioners demanded of the respondents the possession of said schooner, and forbade the respondents using her or taking or sending her upon any voyage out of said city; but that the respondents neglected and refused to deliver to the petitioners the possession of said schooner, and denied that they were the owners of nine-sixteenth parts of said vessel, or of any greater part and proportion of her than nine-thirty-second parts of the same, and claimed that Elisha T. Smith, one of the respondents, was the owner of seventeen-thirty-second parts of said schooner; that at the time they made demand of said schooner, she was, and ever since had been, in the possession of the respondents; that they had, at and within said city, converted her to their own use, and threatened to send her out of the state; that the petitioners had no way of obtaining possession of said schooner without the assistance of a court of equity; and that they feared that they might be deprived of and wholly lose their interest in the same. The bill thereupon prayed the court to order and decree, under some suitable penalty, that the respondents deliver over said schooner to the petitioners, and render to them an account of the earnings of the same, and that they be prohibited from using, or in any way interfering in the management of the same.

To this bill the respondents demurred specially, assigning as cause of demurrer that the subject matter presented by the bill, and the relief sought by it, were not within the jurisdiction of the city court, but were proper subjects of admiralty and maritime jurisdiction, and were by law within the sole and exclusive jurisdiction of the district court of the United States.

The city court sustained the demurrer and dismissed the bill. The petitioners thereupon brought the record before the superior court by motion in error, by which court the questions arising on the record were reserved for the advice of this court.

On the trial in this court the question whether the courts of equity of this state have a concurrent jurisdiction with the courts of admiralty of the United States in matters of equitable maritime jurisdiction was elaborately discussed, but as the court decided the case wholly on the ground of the insufficiency of the bill as an ordinary bill in equity, the arguments of counsel, which were mainly confined to the question of jurisdiction, are omitted. It was claimed on the part of the respondents that the bill was insufficient as a bill for an account, in not showing that the respondents had refused to account, and also in not showing that they had previously used the vessel, so as to be liable to account; and that it was defective as a bill for an injunction against the use of the vessel by the respondents and for a delivery of the possession of the vessel, inasmuch as the right of the respondents to the possession was a legal right, and no facts were averred which would justify the interposition of a court of equity, even if such a court would have jurisdiction.

*Goodman,* for the plaintiffs in error.

*L. F. Robinson* and *W. D. Shipman,* for the defendants in error.

STORRS, C. J. We are of the opinion that the bill in this case is insufficient. It is brought by a major part of the owners of a vessel against the other part owners who are in the possession of it, and prays, first, for an account from the defendants, and secondly, that they may be compelled, by injunction, to deliver the vessel specifically to the plaintiffs.

In regard to the claim for an account, there is no doubt that if there were a matter of account between these parties growing out of the use, by any of them, of the vessel owned

by them jointly, and of which they are tenants in common, as if one of them had received more than his proportion of the avails or use of it, and there has been a refusal to render such an account, a court of equity would have jurisdiction of such matter on a proper bill brought for the purpose of compelling the rendering of an account. But it would be necessary, in such a bill, to state the facts upon which the owners called on to render an account had made themselves liable to do so, and a refusal on their part. In this case no such facts are alleged. It is not stated that the defendants have received more than their proportion of the avails or earnings of the vessel, or even that they have received any of such avails or earnings; or that they have ever employed the vessel in any business or manner whatever, either on account or for the benefit of themselves or the plaintiffs. Nor is any refusal by them to render an account, or that which is tantamount to such refusal, alleged in the bill. Indeed, it contains nothing which bears on the matter of accounting, except an allegation that the defendants have had the possession of the vessel, and that they and the plaintiffs are joint owners of it, and a prayer for an account. No authority or reasoning is necessary to show that a statement merely, that some of the joint owners of personal property have had the sole possession of it, without an averment of any facts from which it appears that there exists any proper subject matter of an account between them and the other owners growing out of such possession, and of what it consists, lays no foundation for a bill of account against them by the other owners. The bill, therefore, so far as it calls for an account, can not be sustained.

As to the other relief sought in this case, an injunction directing the defendants specifically to deliver to the plaintiffs the possession of the vessel in question, the bill is obnoxious to the same general objection which has just been pointed out in respect to it as a bill for an account. It alleges no facts upon which such relief should be granted, whether it is sought in a court of equity or admiralty.

It is a general principle of the common law, that, where

personal property is owned by several persons, all of them are equally entitled to the possession of it. It results from this principle, that where one of them is in the actual possession of it he has a right to maintain it against the others. His possession is deemed, in law, to be the possession of all the owners, and there is no specific remedy by which he can be compelled to deliver the possession of it to the others. Nor does the mere possession of it render him liable to them, or any of them, for an injury done to it by him, short of a destruction of it, or a conversion of the whole of it to his own use, or that which is equivalent. The principle which prevails in regard to real estate owned by several persons, that where one ousts another of the possession the latter may be restored to the possession of his part by a proper action for that purpose, is not applicable to personal property. The only mode by which one of the joint owners can obtain the possession of it from another, except by consent of the latter, is by taking possession when he finds a fit opportunity to do so. The law on this subject is thus fully and clearly stated by Littleton in his Tenures. "If two have an estate in common [in land] for term of years, &c., and the one occupy all, and put the other out of possession and occupation, he which is put out of occupation shall have, against the other, a writ of *ejectione firmæ* of the moietie," &c., (sect. 322.) "In the same manner it is, where two hold the wardship of lands or tenements during the non-age of an infant, if the one ousts the other of his possession, he which is ousted shall have a writ of *ejectione de gard* of the moietie, &c., because that these things are chattels reals, and may be apportioned and severed, &c., but no action of trespass—*videlicet: quare clausum suum fregit, et herbam suam &c., conculcavit et consumpsit &c., et hujus modi actiones, &c.*—the one can not have against the other, for that each of them may enter and occupie in common, &c., *per my et per tout*, the lands and tenements which they hold in common. But if two be possessed of chattells personals in common, by divers titles, as of a horse, an oxe, a cowe, &c., if the one take the whole to himself out of the possession of the other, the other hath no other remedie but to

take this from him who hath done to him the wrong to occu-
pie in common, &c., when he can see his time, &c. In the
same manner it is of *chattels reals, which can not be severed,*"
&c., (section 323.) These, as general principles, are fully
recognized not only by courts of law and equity, but also,
with a modification which will be hereafter mentioned, by
courts of admiralty. It is not necessary to determine whether
a court of chancery, in the exercise of its original and appro-
priate jurisdiction, might not in a peculiar case calling for its
equitable interposition, require a joint owner of personal
property in his possession, on an application by the others,
to furnish security to the latter for the preservation or protec-
tion of their interest in it, or even direct the possession of it
to be delivered to them; as if the former should threaten to
waste or destroy the property wantonly and should be unable
to respond in damages to the latter for such injury. It has
been decided, in consonance with the general rule of law,
that where one tenant in common of a ship has not destroyed
the common property, but only taken it out of the possession
of another and carried it away, the latter can not sustain an
action at law against him upon a charge of fraudulently and
deceitfully sending the ship to foreign parts where she was
lost. But we are inclined to the opinion that where such a
wrong is meditated, a court of equity would furnish relief by
injunction or otherwise, on the principle of preventing remed-
iless injury, upon which it often interposes to protect prop-
erty of which one person has the possession in the character
or nature of a trustee for another and there is danger of its
improper disposition or willful destruction. Hinde's Prac.,
126. Ambl., 273. 1 Bro., 105, 279. 1 Ch. R., 110. 2 Atk.,
82. 6 Ves., 172. It is not, however, necessary to inquire as
to the extent of the jurisdiction of a court of equity in regard
to such cases, because there is, in the present case, an entire
want of any averment in respect to any meditated injury to
the vessel in question which would lay the foundation for any
relief to the plaintiffs by such a court, either in the mode
sought by them or by requiring security from the defendants.
The only allegation pertinent to the claim for any such relief

is, that the defendants threaten to send the vessel out of the state, and that, of itself, independent of the circumstances under which that act is contemplated, or its object, is clearly insufficient to require or justify the interference of a court of equity.   The case of *Halley* v. *Goodson*, 2 Merivale's R., 77, has been relied on by the plaintiffs to show that the ordinary equitable jurisdiction of a court of chancery is sufficiently extensive to reach the present case.   Without questioning the correctness of that decision, it does not aid the plaintiffs, because, even conceding, what is however very doubtful, that it sufficiently appears in the present case that the shares of the different owners of the vessel in question are not ascertained, upon which fact the court in the case cited entertained jurisdiction, the bill here alleges no further fact, in connection with such an averment, which would entitle the plaintiffs to any assistance in a court of equity on such ascertainment. Upon ordinary equitable principles, therefore, the plaintiffs are not entitled to relief.

But it is claimed that in accordance with the rules which prevail in the court of admiralty, a court of equity should direct the vessel to be delivered to the plaintiffs, and that the jurisdiction of these courts on this subject is concurrent.   It is settled as a principle of maritime law, which will be enforced in a court of admiralty, on the ground of national policy and in favor of commerce, in respect to that particular species of personal property which consists of ships and vessels, where they are owned by several persons, that, irrespective of the fact that they are in the possession of all or only a part of the joint owners, a majority of the owners in value have a right to employ them, even against the will of the minority, on giving a stipulation to the dissenting owners for their safe return, if required to do so by the latter on a proper application to the admiralty; and that if the majority decline to employ them, the minority of the owners may employ them in like manner; and that, in these cases, a court of admiralty will, if necessary, compel the dissenting part owners, if they are in possession of the ship, to yield the property to

those who have thus the right to employ it for that purpose. It is also laid down in the treatises on this subject, that if the minority happen to have possession of the ship and refuse to employ it, the majority may, by a warrant for that purpose, obtain possession of the ship and send it to sea, upon giving the customary security to the minority for its safe return. Flanders on Shipping, 359. 3 Kent's Com., part 5, lect. 45. Abbot on Shipping, 101, part 1, ch. 3. From the limitation, as thus expressed, of the right of the majority to a case where the minority in possession of a ship refuse to employ it, it seems to be implied that, unless there is such a refusal, the majority could not by such a proceeding dispossess them of the ship; and it does not appear to be explicitly settled that the majority could do so. If they could not, the present bill is plainly defective in not alleging that the defendants, who are stated to be in possession of the vessel, refuse or are unwilling to employ it. But it is unnecessary here to decide this point, for it is obvious that the rules which have been mentioned as having been established in courts of admiralty, have been adopted only for the purpose of providing that the ship should not be kept idle, but employed where it is desired by any of the owners, notwithstanding the others may object, and that it is only for the purpose of carrying that object into effect that those courts will interfere in the manner which has been stated. But where it does not appear that it is the object of a portion of the owners of a ship, in applying for the possession of it, to employ it themselves, or no purpose appears excepting merely to procure a transfer of the possession of the vessel to themselves, such interposition, as it would be wholly useless, would be refused. Applying these principles to this case, it is clear that this bill can not be sustained, since it not only does not allege that the defendants are unwilling to employ the vessel in question, but it is not stated that the plaintiffs desire the possession of it for the purpose or with the intention of employing it, nor is any object whatever mentioned for which they ask to have it delivered to them.

It hence becomes unnecessary to determine the question

which has been so elaborately and ably argued before us, as to whether, and to what extent, a court of chancery and a court of admiralty have concurrent jurisdiction on this subject.

There is no error in the judgment complained of.

In this opinion the other judges concurred.

Judgment affirmed.