HAROLD J. COOLIDGE & another, trustees, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

SAME *vs.* SAME.

Norfolk. January 15, 1929. — September 11, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Tax,* On succession. *Statute,* Construction. *Gift. Trust. Constitutional Law,* Taxation, Due process of law, Equal protection of the law, Impairment of the validity of contract.

On July 29, 1907, a father and mother conveyed to trustees a large amount of real and personal property voluntarily and not as a *bona fide* purchase for full consideration in money or in money's worth. The trustees were given extensive powers of management, investment and reinvestment with the right to determine finally what receipts and payments should be credited to income or principal. The income was to be paid in certain proportions to each of the settlors during their joint lives and then the entire income to the survivor, and, upon the death of the survivor, the principal was to be divided equally among their five sons, provided that, if any of the sons should pre-

decease the survivor of the settlors, his share should go to those entitled to take his intestate property under the statute of distributions in force at the death of such survivor, with a further provision to the effect that in no event should a widow of such deceased son take as distributee more than half of such share. There was no provision giving power of revocation or of modification or of termination previous to the death of the survivor of the settlers. On April 6, 1917, the settlors assigned their interest in the trust to the five sons. The mother died in January, 1921, and the father in 1925, both residents of the Commonwealth. All the sons survived them. *Held*, that

(1) The conveyance to the trustees did not divest the settlors of all interest in the property;

(2) The death of the survivor of the settlors was expressly fixed as the effective date of succession by the final beneficiaries to the enjoyment of the principal and income of the trust estate: the ultimate beneficiaries could not be determined with certainty until that time;

(3) The assignment in 1917, even if considered in the light of the trust instrument, did not vest the entire interest in the trust estate in the sons, and the trust could not then terminate, because the succession could not take place or be ascertained until the death of the survivor of the settlors;

(4) The nature of the succession which occurred in 1925 made proper an assessment upon the sons of an excise under G. L. c. 65, § 1;

(5) The principle, that no statute is to be construed as operating retroactively unless imperatively required by its words, was not applicable because the succession, which was the subject of the excise, was not fully accomplished until after the enactment of the governing statute now found in G. L. c. 65, § 1;

(6) As so construed, the statute was not in violation of art. 12 of the Declaration of Rights, in excess of the power granted by c. 1, § 1, art. 4 of the Constitution of the Commonwealth, or in violation of art. 1, § 10, or of the Fourteenth Amendment to the Federal Constitution.

Two PETITIONS, filed in the Probate Court for the county of Norfolk on November 8, 1927, and afterwards amended, seeking under G. L. c. 65, § 30, to determine the validity of certain succession taxes.

In the Probate Court, *McCoole*, J. reserved the cases for determination by this court upon the pleadings, an agreed statement of facts, and the following requests for rulings, presented by the petitioners in each case.

"1. G. L. c. 65, § 1, does not, according to its true construction, purport to authorize the imposition of the tax now in question.

"2. If G. L. c. 65, § 1, purports to authorize the imposi-

tion of the tax now in question, it is repugnant to art. 12 of the Declaration of Rights.

"3. If G. L. c. 65, § 1, purports to authorize the imposition of the tax now in question, it is in excess of the power granted to the General Court by c. 1, § 1, art. 4 of the Constitution of Massachusetts.

"4. If G. L. c. 65, § 1, purports to authorize the imposition of the tax now in question, it is repugnant to art. 1, § 10, of the Constitution of the United States in that it impairs the obligation of the contract embodied in the trust indenture of July 29, 1907.

"5. If G. L. c. 65, § 1, purports to authorize the imposition of the tax now in question, it is repugnant to art. 1, § 10, of the Constitution of the United States in that it impairs the obligation of the contract embodied in the assignment of April 6, 1917.

"6. If G. L. c. 65, § 1, purports to authorize the imposition of the tax now in question, it deprives the petitioners and those claiming under them of their property without due process of law contrary to the Fourteenth Amendment to the Constitution of the United States.

"7. If G. L. c. 65, § 1, purports to authorize the imposition of the tax now in question, it denies to the petitioners and those claiming under them the equal protection of the laws contrary to the Fourteenth Amendment to the Constitution of the United States."

*R. G. Dodge,* (*H. S. Davis* with him,) for the petitioners.

*J. S. Eastham,* Assistant Attorney General, for the respondent.

RUGG, C.J.. These are petitions brought, under G. L. c. 65, § 30, to determine the validity of succession taxes. The petitioners are trustees under a deed and declaration of trust executed on July 29, 1907, by J. Randolph Coolidge and Julia Coolidge and the petitioners. By that deed a large amount of real and personal estate was transferred to the trustees by the settlors voluntarily and not as a *bona fide* purchase for full consideration in money or in money's worth. The trustees were given extensive powers of management, investment and reinvestment with the right to determine

finally what receipts and payments should be credited to income or principal. The part of the trust fund furnished by J. Randolph Coolidge was four sevenths, and the part furnished by Julia Coolidge was three sevenths. By the terms of the trust the income was to be paid in these proportions to each of the settlors during their joint lives and then the entire income to the survivor, and, upon the death of the survivor, the principal was to be divided equally among their five sons, provided that, if any of the sons should predecease the survivor of the settlors, his share should go to those entitled to take his intestate property under the statute of distributions in force at the death of such survivor, with a further provision to the effect that in no event should a widow of such deceased son take as distributee more than half of such share. There was in the declaration of trust no power of revocation or modification or termination prior to the death of the survivor of the settlors. *Coolidge* v. *Loring,* 235 Mass. 220. By instrument executed on April 6, 1917, the settlors assigned their interest in the trust to the five sons, all of whom eventually survived the termination of the trust. Julia Coolidge died in January, 1921, and J. Randolph Coolidge on November 10, 1925, both being residents of this Commonwealth. The respondent determined that the petitioners were subject to excise taxes under G. L. c. 65, § 1, as amended, upon the four sevenths and upon the three sevenths of the trust estate furnished respectively by each settlor as of November 10, 1925. There is no controversy as to the amount of the excise if any is due.

When the declaration of trust was executed, no statute was operative under which the trust property could have been subjected to an excise because the succession was to direct descendants of the settlors. Statutes then in force provided for levy of an excise only where the succession was to collateral relatives and to strangers. There had been approved on June 27, St. 1907, c. 563, which took effect on September 1, 1907, about five weeks after the date of the declaration of trust. This is the first relevant statute. Its provisions were: § 1. "All property within the jurisdiction of the Commonwealth . . . which shall pass by . . . deed, grant,

or gift, except in cases of a *bona fide* purchase for full consideration in money or money's worth, made or intended to take effect in possession or enjoyment after the death of the grantor, to any person . . . shall be subject to a tax . . ." § 25. "This act shall not apply to estates of persons deceased prior to the date when it takes effect, or to property passing by deed, grant, sale, or gift made prior to said date . . . ." Said § 1 was amended in particulars not here material by St. 1912, c. 678, § 1. It was provided by § 3 of the latter statute: "The provisions of section one of this act shall apply to the estates of all persons dying subsequent to the passage hereof, and to all property passing by deed, grant or gift except in cases of a *bona fide* purchase for full consideration in money or money's worth, made or intended to take effect in possession or enjoyment after the death of the grantor or donor, if such death occurs subsequent to the passage hereof . . . ." Said § 25 was amended by St. 1914, c. 563, § 1, so as to read: "This part shall not apply to . . . property passing by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor when such death occurred prior to said date [September 1, 1907] . . . ." The relevant statutory provisions operative since January 1, 1921, are in G. L. c. 65, as follows: § 1. "All property within the jurisdiction of the Commonwealth . . . which shall pass by . . . deed, grant or gift, except in cases of a *bona fide* purchase for full consideration in money or money's worth . . . made or intended to take effect in possession or enjoyment after his death . . . to any person, absolutely or in trust . . . shall be subject to a tax . . ."; § 36. "This chapter shall apply only to property or interests therein passing or accruing upon the death of persons dying on or after May fourth, nineteen hundred and twenty . . . ."

The question for decision is whether the net trust estate passing to the sons on the death of the surviving settlor is subject to excise taxes under these statutes.

The "tax authorized by these statutes is a tax upon 'succession' which includes the 'privileges enjoyed by the beneficiary of succeeding to the possession and enjoyment of

property.' See *Attorney General* v. *Stone*, 209 Mass. 186, 190; *Minot* v. *Winthrop*, 162 Mass. 113, 124; *Crocker* v. *Shaw*, 174 Mass. 266, 267. . . . we are here concerned, not with a tax on the privilege of transmission, not with an attempt to tax a donor's estate for an absolute gift made when no tax was thought of, . . . but with a tax on the privilege of succession, which also may constitutionally be subjected to a tax by the state whether occasioned by death, *Stebbins* v. *Riley* . . . [268 U. S. 137], or effected by deed, *Keeney* v. *New York*, 222 U. S. 525; *Chanler* v. *Kelsey* . . . [205 U. S. 466]; *Nickel* v. *Cole* . . . [256 U. S. 222]. The present tax is not laid on the donor, but on the beneficiary; the gift taxed is not one long since completed, but one which never passed to the beneficiaries beyond recall until the death of the donor . . . . So long as the privilege of succession has not been fully exercised it may be reached by the tax." *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 269, 270, 271, affirming *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, where earlier Massachusetts decisions are reviewed. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 267 Mass. 240, 242.

The settlors by the deed of July, 1907, divested themselves of all power of disposition over the principal of the trust. It then passed irrevocably from their control. After that they possessed only rights to the income. Thus they did not divest themselves of all interest in the property. They stripped themselves of those rights in April, 1917. That is not pertinent to the issues here involved because before that time the statute had been changed as to taxation of successions so as to include the kind of succession established by the deed of July, 1907. Confessedly at the time of the execution of the trust deed there was no statute exacting an excise on the transfer of the property or on succession to it. This, however, in our opinion is not a decisive factor. The present excise under the statute was levied on the succession, not on the transmission, of the trust fund. As already pointed out succession is a quite different thing from transmission. It is manifest from the terms of the declaration of trust that the death of the survivor of the settlors was ex-

pressly fixed as the effective date of succession by the final beneficiaries to the enjoyment of the principal and income of the trust estate. The excise statute here controlling and already quoted is designed to include within its sweep all methods of succession to property to take effect in possession or enjoyment after the death of the grantor or donor other than those made *inter vivos* for a *bona fide* consideration. By express words it embraces succession created by deed. Whenever property is conveyed upon such limitation that it will vest in interest, possession or enjoyment by reason of the death of the grantor or donor, such succession falls within the descriptive words of the statute. The succession to any of these attributes of property occurring as the result of the death of the grantor or donor constitutes the taxable commodity. *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 515.

The assignment of their life interest in the income of the trust by the settlors to their sons in 1917 did not operate to alter the nature of the trust instrument or of the transaction out of which spring the rights of the final beneficiaries. It is obvious that this assignment did not, even in combination with the trust instrument of July, 1907, vest the entire interest in the trust in the five sons. That was recognized by the position of the trustees, settlors and sons in *Coolidge* v. *Loring*, 235 Mass. 220, 222, where reformation of the trust instrument of July, 1907 was sought, because the demand on the trustees by the sons after the assignment for immediate distribution of the fund had been refused by reason of the "possible claim of a contingent interest on behalf of wives and children of sons predeceasing" the settlors. If no ultimate succession had been contemplated under the trust instrument of July, 1907, the assignment to the sons of the life interests of the settlors would have vested in the sons such complete interest in the trust fund that they would have been in effect absolute owners of it, and it might have been reasonable and just that they should have had the control and disposal of it, unless some good cause appeared to the contrary. *Sears* v. *Hardy*, 120 Mass. 524. *Sears* v. *Choate*, 146 Mass. 395, 398. *Claflin* v. *Claflin*, 149 Mass. 19,

22.  *Langley* v. *Conlan,* 212 Mass. 135, 138.  See *Forbes* v. *Snow,* 245 Mass. 85, 93, and *Abbott* v. *Williams,* 268 Mass. 275, 283.  But manifestly the trust could not then terminate, because the succession could not take place or be ascertained until the death of the survivor of the settlors.

It is not necessary to the validity of the excise on succession that an interest in the property pass directly from the grantor or settlor at the time of his death.  *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 267 Mass. 240, 242.  If the beneficiary under the instrument of gift succeeds to an interest in the property not previously enjoyed, which bears a distinct and necessary relation to the death of the grantor or settlor, that is a succession subjected to the excise by the terms of the statute.

Plainly under the deed of July, 1907, the ultimate beneficiaries could not be determined with certainty until the death of both settlors.  However unlikely, it nevertheless was possible that all or any number less than all of the five sons might predecease the survivor of the settlors.  Which ones, if any of them, might so predecease could not be known until both settlors had died.  No possession, enjoyment or title to the trust would ultimately vest in any son so predeceased or in his estate.  The interest of the sons surviving the settlors in the trust fund did not pass to them finally and irrevocably until and because of the death of both settlors.  The property conveyed to the trustees by the deed of trust was so limited that it vested in the sons who should survive both settlors in interest, possession and enjoyment only by reason of and upon the death of the survivor of the settlors.  This succession falls within the descriptive words of the statute.  The five sons of the settlors, who have become the ultimate beneficiaries of the trust, had no power of control individually or collectively over the trust fund while either of the settlors continued to live.  They had no possession of it.  That was vested exclusively in the trustees.  They had no enjoyment of the trust fund, except as a vision of the future.  They had no power of disposal of the whole or any part of the corpus of the trust estate.  That power was enjoyed by the trustees alone.  The extent of their interest

was, at most, a remainder subject to be divested upon a condition subsequent with a limitation over upon the happening of that contingency. *Clarke* v. *Fay,* 205 Mass. 228, where cases are collected and reviewed. *Blanchard* v. *Blanchard,* 1 Allen, 223, 226. The nature of their interest might be the subject of assignment. Other interests of which the assignor has no possession or enjoyment may be assigned. *Citizens Loan Association* v. *Boston & Maine Railroad,* 196 Mass. 528, 530, 531. *Taylor* v. *Barton Child Co.* 228 Mass. 126, 130. Such rights are potential only and not vested in possession and enjoyment. Under the deed of trust while either settlor lived the sons had no unrestricted right to receive and to use the proceeds of the property such as came to them upon the death of the last surviving settlor. It is that succession to unrestricted and absolute title, in place of no possession or enjoyment whatever and a contingency as to title, which is made subject to the excise under the statute. The acquisition of the rights which accrued to the five sons on the death of the last settlor was a fundamental change in the nature of their relation to and interest in the trust. It replaced a contingency with a certainty. Full title, complete and unrestricted in every particular, did not vest in them until that event. By that event the actual transfer of the possession of the trust fund passed under the terms of the deed of July, 1907, from the trustees to the five sons and the full enjoyment thereof as to title and income for the first time became theirs. It seems to us that this change constituted a succession. The excise is not levied on mere enjoyment, possession or ownership: it is levied upon the assured and completed ripening of a more or less tenuous, dubious and immature right into actual possession, irrevocable enjoyment and full title. We think that this constituted a succession which lawfully might be made subject to the excise by a statute enacted and effective before such succession took place.

This is the inevitable result of our own decisions. Numerous excerpts from opinions written by judges eminent for learning and wisdom leading to that conclusion are collected in *Magee* v. *Commissioner of Corporations & Taxation,* 256

Mass. 512, 515, 516, and in *Saltonstall* v. *Treasurer & Receiver General,* 256 Mass. 519, 523, 524. It seems unnecessary to repeat them. They are referred to as in part the basis of this decision. In discussion as to the nature of succession and the accrual of rights made subject to the excise upon succession, it was said in *State Street Trust Co.* v. *Treasurer & Receiver General,* 209 Mass. 373, at page 378: "The test . . . by which . . . exemption [from the excise] is to be ascertained does not depend upon whether a power to revoke has or has not been inserted, but upon the passing of the property with all the attributes of ownership independently of the death of the transferror. It is the absence of the power of control with the unrestricted right of the recipient to dispose of the property and to receive and use the proceeds, which by the express language of the statute subjects it to the tax. . . . the intention of the settlor is plain, that the principal, even if it vested in title, was not to vest in possession and enjoyment during her life." The test thus stated supports the excise here assailed. Although the facts in the case at bar differ in some particulars from those in *Saltonstall* v. *Saltonstall,* 276 U. S. 260, we think that that decision supports the conclusion that these excises might lawfully be levied.

The principle that no law is to be construed as operating retroactively unless imperatively required by the words of the statute is recognized. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, where cases are reviewed. *Fullerton-Krueger Lumber Co.* v. *Northern Pacific Railway,* 266 U. S. 435, 437. That principle is not here applicable because the succession, which is the subject of the excise, was not fully accomplished until after the enactment of the governing statute. Tax laws are to be strictly construed and every doubt resolved in favor of the taxpayer. *Eaton, Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523. The words of the already quoted statutes, construed according to the natural and approved usage of the language, plainly include within their ambit such a succession as here has been taxed. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also

grave doubts upon that score." *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401. *Kennedy* v. *Commissioner of Corporations & Taxation,* 256 Mass. 426, 430. The authorities already cited appear to us to establish the constitutionality of the statute under which this excise was laid. Giving full weight to all these principles, they do not militate against the constitutionality of the present statute and of the excise levied thereunder.

The succession, as here defined and made subject to the excise, has been recognized for many years as a commodity which rightly may be made subject to an excise. *Minot* v. *Winthrop,* 162 Mass. 113, 115–122. *Callahan* v. *Woodbridge,* 171 Mass. 595, 597. *Crocker* v. *Shaw,* 174 Mass. 266, 267. *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588. *Attorney General* v. *Stone,* 209 Mass. 186. *Burnham* v. *Treasurer & Receiver General,* 212 Mass. 165. *Clarke* v. *Treasurer & Receiver General,* 226 Mass. 301, 305. The element of succession being the taxable commodity does not deny to the petitioners the equal protection of the laws nor does it deprive them of property without due process of law. *Cahen* v. *Brewster,* 203 U. S. 543. *Chanler* v. *Kelsey,* 205 U. S. 466. *Nickel* v. *Cole,* 256 U. S. 222. *Saltonstall* v. *Saltonstall,* 276 U. S. 260.

The validity of the present statute under the Constitution of the United States and of this Commonwealth appears to us to be established by these and the other authorities already cited.

The case at bar is distinguishable from *Shwab* v. *Doyle,* 258 U. S. 529, *Shukert* v. *Allen,* 273 U. S. 545, *Nichols* v. *Coolidge,* 274 U. S. 531, *Reinecke* v. *Northern Trust Co.* 278 U. S. 339, 345, 347, and *Chase National Bank* v. *United States,* 278 U. S. 327. In each of those cases the tax under consideration was the Federal estate tax levied upon the property of the deceased transmitted at his death. That is a tax levied upon a subject quite different from the succession to property by a beneficiary, which is the subject of the present excise.

The case at bar is distinguishable from *Dexter* v. *Treasurer & Receiver General,* 243 Mass. 523, 525. In that case it was

held that the "property" passed not upon the death of the donor but upon an outside event, and that "it did not pass by deed intended to take effect in possession or enjoyment after his death." The same in substance is true of *People* v. *Northern Trust Co.* 330 Ill. 238. The case at bar also is distinguishable from the points decided in *First National Bank* v. *Commissioner of Corporations & Taxation*, 258 Mass. 253.

It follows that each petition for abatement must be denied and decrees are to be entered to that effect.

*Ordered accordingly.*