WILLIAM H. BLODGETT, TAX COMMISSIONER, *vs.* THE UNION AND NEW HAVEN TRUST COMPANY, ADMINISTRATOR (ESTATE OF MARGUERITE STUART TROWBRIDGE).

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 24th, 1929—decided March 31st, 1930.

*Farwell Knapp,* with whom, on the brief, was *Benjamin W. Alling,* Attorney General, for the appellant (plaintiff).

*J. Dwight Dana,* with whom, on the brief, was *Huntington T. Day,* for the appellee (defendant).

MALTBIE, J. In July, 1919, a banking firm in London, England, bought for Mrs. Marguerite Stuart Trowbridge certain bonds and continued to hold them thereafter until her death. On July 14th, 1924, Mrs. Trowbridge wrote the firm a letter, as follows: "I wish the £30,500 Funding Loan that you hold for me to stand in my husband's name as well as in my own, so that, in the event of my dying suddenly, it may pass to him immediately without any legal formalities. My mother had the Hongkong & Shanghai shares (that you kept for her) put in her name and in mine; at her death they came to me without formalities of any sort. I should be much obliged if you would give this matter your earliest attention." Thereafter the firm held the bonds jointly in the names of Mrs. Trowbridge and

her husband in accordance with the terms of the letter. Mrs. Trowbridge died intestate January 16th, 1928, domiciled in New Haven, and the defendant is administrator upon her estate. It filed a supplementary inventory including these bonds for the purpose of determining whether a succession tax was due upon them, stating in the inventory that it believed they had vested at her death in her husband and had been reduced to possession by him. The sole question we are asked in the reservation to answer is this: "Are the Bearer Bonds referred to in the supplementary inventory filed in the Probate Court by the administrator, Exhibit A, subject to the Connecticut Succession tax under the provisions of Chapter 149 of the Public Acts of 1925 as amended by Chapter 81 of the Public Acts of 1927, the law in effect at the date of the decedent's death?"

The parties are agreed that the letter of Mrs. Trowbridge, with the consequent act of the banking firm thereon, was effective to create in her husband an immediate interest in the bonds, capable of ripening into an absolute ownership in him should he survive her, and we approach the case from that standpoint. The administrator proceeds in its argument upon the basis that they were held by a joint tenancy having the attributes of such a tenancy as those were recognized by the English common law. We never have looked with favor upon such a tenancy in this State, and while one could perhaps be created where a clear intent to do so is evidenced by a proper instrument, we seek to avoid the result wherever it can be done without doing violence to the plain intent of the parties. *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 317, 130 Atl. 483; *Allen* v. *Almy,* 87 Conn. 517, 524, 89 Atl. 205. Thus a gift to A and B, the survivor to take the whole absolutely, will be construed to give

A and B estates in common with a right in the survivor to take the whole as a remainder interest. *Houghton* v. *Brantingham,* 86 Conn. 630, 636, 86 Atl. 664. Such estates are the most that the husband can claim in the bonds.

The statute referred to in the question reserved for our advice is printed in the footnote. This statute was not intended to apply to property given as was that involved in this case, where the right of survivorship is a separable estate though created contemporaneously with the gift for life, but rather to property where the right is attached by operation of law as an incident to the estate immediately given. While the early portion of it would perhaps be capable of a broader construction, that this was not the intent seems clear from the provision in the latter portion that such property should be taxed as though held by a tenancy in common with a devise or bequest by "such deceased tenant by the entirety or joint tenant" of his interest therein to the survivor. Such has been the application of the statute of New York from which the tax commissioner says our statute was virtually copied. *Matter of Kane,* 246 N. Y. 498, 159 N. E. 410; *Matter of Dunn,* 236 N. Y. 461, 141 N. E. 915;

---

Any property, real or personal, held in the joint names of two or more persons or by tenants by the entirety, or deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to either or to the survivor, shall, upon the death of any such person, be subject to the tax imposed by the provisions of Chapter 190 of the Public Acts of 1923, as amended, in the same manner as though all of such property had been owned by such parties as tenants in common and the interest of such deceased person had been devised or bequeathed by such deceased tenant by the entirety or joint tenant by will to the surviving tenant by the entirety, joint tenant or tenants or person or persons in equal shares. The provisions of this act shall not apply to a joint checking or savings account in any bank, nor shall they apply either to real estate or to tangible personal property situated without this State.

*Matter of Lyon,* 233 N. Y. 208, 135 N. E. 247. Such too has been the basis of the arguments of counsel on both sides before us.

There is another and very persuasive reason why the statute is not to be construed as applicable to such a situation as the one before us. As we have said, the most that Mr. Trowbridge can claim is that he was an owner of the bonds in common with his wife so long as both lived and at her death before his own he became full owner of them. During the life estate he had a right of possession of them only equal to her own and a right to receive one half of the income of them. *Pastine* v. *Altman,* 93 Conn. 707, 716, 107 Atl. 803. The bonds being in her possession, through her agents, so long as she lived he could not, at least in the absence of special circumstances justifying interference in equity, take them into his own possession. *Southworth* v. *Smith,* 27 Conn. 355, 359. But he could not defeat Mrs. Trowbridge's right to receive one half the income, and this would be so even though he were in possession, for he would be obligated to account to her for her share. *Lacon* v. *Davenport,* 16 Conn. 331, 341; *Barnum* v. *Landon,* 25 Conn. 137, 151; *Southworth* v. *Smith, supra,* p. 358. At her death he became at once entitled to the full possession of the bonds, including the half interest she had owned in them, and to the enjoyment of the right to the income from that half which before had been hers. Ever since 1915 our statutes have contained a provision that all property of such a nature as these bonds "of any decedent which shall pass by deed, grant or gift, . . . intended to take effect in possession or enjoyment at the death of such grantor or donor, shall be liable to a tax as hereinafter provided." Public Acts of 1915, Chap. 332, § 3; General Statutes, § 1261; Public Acts of 1919, Chap. 115; Public Acts of 1923, Chap. 190, § 1. The situation

before us falls fully within the express terms of the last clause of the statute. *Coolidge* v. *Commissioner of Corporations & Taxation* (Mass.) 167 N. E. 757; *Wright* v. *Blakeslee,* 101 U. S. 174, 176; *Matter of Orvis,* 223 N. Y. 1, 6, 119 N. E. 88; *Estate of Felton,* 176 Cal. 663, 169 Pac. 343; *In re Huggins,* 96 N. J. Eq. 275, 125 Atl. 27, 29, affirmed, as *Fairleigh* v. *Bugbie,* 103 N. J. L. 182, 130 Atl. 923, 134 id. 917. This provision of the statute does indeed mark a departure from the strict nature of a succession tax, that is, a tax imposed upon the right to succession to property at the death of its owner; *Silberman* v. *Blodgett,* 105 Conn. 192, 201, 134 Atl. 778; for here the right which is taxed is not created by death but only ripens into possession or enjoyment upon the occurrence of that event. There is, however, no question of the right of the legislature to impose such a tax if it sees fit to do so. *Blodgett* v. *Union & New Haven Trust Co.,* 97 Conn. 405, 407, 410, 116 Atl. 908; *Keeney* v. *New York,* 222 U. S. 525, 32 Sup. Ct. 105; *Saltonstall* v. *Saltonstall,* 276 U. S. 260, 48 Sup. Ct. 225; *Coolidge* v. *Commissioner of Corporations & Taxation, supra; Marble* v. *Treasurer & Receiver General,* 245 Mass. 504, 508, 139 N. E. 442; *Matter of Wendel,* 223 N. Y. 433, 442, 119 N. E. 879; *Matter of Keeney,* 194 N. Y. 281, 285, 87 N. E. 428; *Matter of Brandreth,* 169 N. Y. 437, 440, 62 N. E. 563. It follows that such an interest as Mr. Trowbridge acquired in the bonds at the death of his wife is taxable under the provisions of § 1261 of the General Statutes as amended. There would then be no necessity of the enactment of the Public Act of 1925 to make it taxable, and the intent of that Act must be sought in some other purpose.

The defendant's contention that no tax is due is necessarily based upon an assumption that we have before us a true joint tenancy, and the applicability

of the statute has been argued, and properly, from the standpoint of that assumption. On the other hand, the plaintiff, while recognizing that the facts may not establish such a tenancy, with equal propriety has argued his case upon the same assumption. Our conclusion that the facts do not show such a tenancy, makes it unnecessary to determine the effect of the statute.

As the question in the reservation is limited to the application to the situation before us of this Act, we must answer it in the negative.

No costs will be taxed in this court to either party.

In this opinion HAINES and HINMAN, Js., concurred.

WHEELER, C. J. (concurring). I answer the question reserved for our advice as the majority do, but differ with the grounds and reasoning of the opinion. From their purchase in July, 1919, until July, 1924, Brown, Shipley and Company of London, England, held certain bearer bonds for Mrs. Trowbridge; at this date she wrote them a letter as follows: "I wish the £30,500 Funding Loan that you hold for me to stand in my husband's name as well as in my own, so that, in the event of my dying suddenly, it may pass to him immediately without any legal formalities. My mother had the Hongkong & Shanghai shares (that you kept for her) put in her name and in mine; at her death they came to me without formalities of any sort. I should be much obliged if you would give this matter your earliest attention." From the time of the receipt of this letter the bonds were held by this firm, as the stipulated facts recite "jointly in the name of the decedent and her husband with the right of survivorship, until the date of decedent's death," when the bonds were delivered to the decedent's husband as his

absolute property. This letter evinced the clear intention on the part of Mrs. Trowbridge to vest in her husband and self a joint interest in the bonds with the right of survivorship, such as she and her mother had had in the Hongkong and Shanghai shares with the right of survivorship. Upon the receipt of the letter and the consequent action of the bankers there was a unity of interest and title covering a like period of time together with a unity of possession. This created a joint tenancy in these bonds. Swift's Digest (1849 Ed.) Vol. 1, p. 107. Husband and wife thereafter had one and the same interest, accruing by one and the same conveyance, at one and the same time and held by the bankers for them by one and the same possession.

This estate carried with it a right of survivorship, and Freeman on Cotenancy & Partition (2d Ed., § 12) says this is "the grand incident of joint estates." In a number of the States statutes have abolished "joint tenancy with its incident of survivorship as it existed at common law" but neither the statutes, nor the decisions in States having no statutes, prohibit the création of a joint tenancy or a joint estate with the right of survivorship where the will or instrument creating the estate by express words or necessary implication indicates its clear intention to create such an estate. Our own court from an early day has looked with disfavor upon the common-law joint tenancy with its "odious and unjust doctrine of survivorship." But that has not prevented our recognition of the right in this jurisdiction to create estates of this nature by will, or deed, or other instrument, when the intention to so create is clear and definite.

In *Rockwell* v. *Swift,* 59 Conn. 289, at page 294, 20 Atl. 200, JUSTICE LOOMIS wrote, "Although we do not in this State recognize the *jus accrescendi* or right

of survivorship as a necessary legal incident of a joint tenancy, yet the principles of the authorities cited under that head must have their full weight, because in the will under consideration the right of survivorship is expressly conferred."

We begin our opinion in *Mahoney* v. *Mahoney,* 98 Conn. 525, 531, 120 Atl. 342, in these words: "The claim of appellants that while in this State there is practically no difference between joint tenancies and tenancies in common, in that the right of survivorship by common law existing in the case of joint tenancies is not recognized, still the rights of survivorship may be created by will, is undoubtedly true. It is only necessary for a testator to indicate such an intention, and the intention if discoverable, will, of course, govern." Again in *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 317, 130 Atl. 483, it is said: "It needs only to be mentioned that in this State joint tenancies are not favored in the law, and that even when a joint tenancy is created it does not, as at common law, carry with it the incident of survivorship. If the latter factor is to be joined to the estate created, it must be done by a definite provision in that regard." CHIEF JUSTICE PRENTICE in *Allen* v. *Almy,* 87 Conn. 517, 89 Atl. 205, quotes at length from the opinion in *Houghton* v. *Brantingham,* 86 Conn. 630, at page 636, 86 Atl. 664, ending, "Whether it can be so created, we need not in this case inquire," and concludes his discussion of the law upon this point thus: "The gift or grant will, in other words, be construed as creating a tenancy in common, unless a different intention on the part of the grantor or testator appears by the instrument of conveyance or will. 2 Underhill on Wills, § 539. The intention, however, if discoverable, will, of course, govern."

My brethren hold in consonance with the parties,

that the letter of Mrs. Trowbridge "with the consequent act of the banking firm theron, was effective to create an immediate interest in the bonds, capable of ripening into an absolute ownership in him should he survive her," but my brethren conclude that while a joint tenancy "could perhaps be created where a clear intent to do so is evidenced by a proper instrument" the gift under the letter of Mrs. Trowbridge created merely a tenancy in common in her husband and self. Every unity requisite for the constitution of a joint tenancy is, as we have shown, present. If not a joint tenancy in the strictest common-law sense, the estate created was a joint estate analogous to a joint tenancy.

The argument and brief of the tax commissioner proceed upon the basis that the letter of Mrs. Trowbridge with the consequent action of the bankers created a joint tenancy. We quote from this brief: "We are willing to concede that the facts in this case warrant the conclusion that a joint estate with survivorship was created in the property in question. It was held in *Houghton* v. *Brantingham*, 86 Conn. 630, at page 636 [86 Atl. 664], . . . 'In this State, therefore, there can be no joint tenancy with the right of survivorship, unless such right is created by the will or other conveyance creating the tenancy.' The words of Exhibit B expressly mention the right of survivorship, so that this case is similar to *Pendleton* v. *Kinney*, 65 Conn. 222 [32 Atl. 331], wherein a will was held to establish a joint tenancy with the right of survivorship since the necessary words were present. See also *Rockwell* v. *Swift*, 59 Conn. 289, 294 [20 Atl. 200]. But if, on the other hand, it should be held . . . that decedent was a tenant in common of this property, we believe that the administrator will admit its taxability." The tax commissioner, without attempting to show that decedent was a tenant in common of this

property, predicates his entire argument upon the assumption that the estate of the decedent was a joint estate. We cannot well avoid the conclusion that the tax commissioner and his counsel are of the opinion that the estate of the decedent was a joint estate with survivorship in her husband and not a tenancy in common. The question of difference between the parties was as to the construction and application of Chapter 149 of the Public Acts of 1925 as amended by Chapter 81 of the Public Acts of 1927.

The interests of the joint tenants vested at the creation of the joint tenancy, and upon the death of Mrs. Trowbridge her husband, who survived her, immediately came into the enjoyment and possession of her one-half interest and title in these bonds by virtue of the creation in 1924, of the joint tenancy and not through a gift or conveyance which took effect upon her death. *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499, 502, 111 N. E. 371; *In re Gurnsey's Estate*, 177 Cal. 211, 170 Pac. 402, 404.

The tax commissioner seeks to tax these bonds under the Public Act which was in effect at the decease of Mrs. Trowbridge but not at the creation of this joint estate. It differs from the ordinary succession tax which is imposed upon the right to succession to property. I do not question the right of the General Assembly to impose a succession tax upon the right to the possession or enjoyment of one half of a joint tenancy or a joint estate previously created, upon the death of one of the joint owners, but I do question whether this Act imposes such a tax, and if it does, whether it can do this, constitutionally, because of the retroactivity of such a tax in this case. Chapter 81 of the Public Acts of 1927 provides that, "any property . . . held in the joint names of two or more persons . . . and payable to either or to the survivor,

shall, upon the death of any such person, be subject to the tax imposed by the provisions of Chapter 190 of the Public Acts of 1923, as amended, in the same manner as though all of such property had been owned by such parties as tenants in common," etc.

By the terms of this Act it imposes a tax on property held in joint tenancy or joint estate in the same manner as if held by tenants in common. It is not a tax on the right to transfer, or on the right to succession, or on the right to possession or enjoyment. The tax commissioner says the Act was copied from the New York Act; if so, the draftsman failed to transpose the terms as well as the intent of that Act. In Chapter 299, Part 1, § 3, Public Acts of 1929, the General Assembly amended the Act of 1927, manifestly as it seems to me attempting to overcome the difficulty I have pointed out and to bring the Act in consonance with the New York Act by providing: "Whenever property shall be held in the joint names of two or more persons and the survivor or survivors of them, the right of the survivor or survivors to the immediate ownership or possession and enjoyment of such property shall be a *taxable transfer,*" etc.

It is the right to the immediate ownership or possession and enjoyment of such property which is denominated a "taxable transfer." There is a wide difference between such a tax and a tax upon joint property as the Act of 1927 provides. The New York Act (Laws of 1916, Chap. 323, p. 864, §§ 83-87) provides, "whenever property is held in the joint names of two or more persons, . . . upon the death of one of such persons the right of the . . . joint tenant . . . to the immediate ownership or possession and enjoyment of such property *shall be deemed a transfer* taxable under the provisions of this chapter," etc. This may well be regarded as a tax upon the right to ownership or pos-

session, and deemed, as the Act makes it, a taxable transfer. The difference between this tax and that in the Connecticut Act of 1927, which in terms and intent is a tax upon property held in joint tenancy or joint estate, is so marked that while the New York Act may be held to create a succession tax, the Connecticut Act before us bears scant resemblance to such a tax save in its title. The Connecticut Act of 1927 was enacted subsequent to the creation of this joint tenancy or joint estate. In *Matter of Lyon*, 233 N. Y. 208, 135 N. E. 247, it is held that the New York Act is retroactive. The Federal authorities construing the Federal estate tax hold that such an Act could not be held to be retroactive.

Tax statutes will not be construed to be retroactive unless their terms are so "clear, strong and imperative" that no other conclusion is reasonable. In *Shwab* v. *Doyle*, 258 U. S. 529, 534, 535, 536, 42 Sup. Ct. 391, the Government claimed that the transferor having died after the passage of the statute the transfer was taxable. The court held: "But granting the contention of the defendant has plausibility, it is to be remembered that we are dealing with a tax measure and whatever doubts exist must be resolved against it." "The initial admonition is that laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared."

We must say of the Connecticut Act, as the court said of the Federal Act, "There is certainly in it no declaration of retroactivity, 'clear, strong and imperative,'" which is the essential condition as expressed in *United States* v. *Heth*, 7 U. S. (3 Cranch) 398, 413; also *United States* v. *Burr*, 159 U. S. 78, 82, 83, 15 Sup. Ct. 1002. See also *Knox* v. *McElligott*, 258 U. S. 546, 42 Sup. Ct. 396; *Lynch* v. *Congdon* (C.C.A.) 1 Fed. (2d) 133; *Blodgett* v. *Union & New*

*Haven Trust Co.*, 97 Conn. 405, 409, 116 Atl. 908. Neither in terms nor by fair or necessary implication can our Act be deemed retroactive.

In the conflict between the New York and the Federal authorities upon whether an Act of this character can be retroactive, I am of the opinion that the weight of authority as well as the better reason support the Federal authorities.

I would answer question (a) that the "Bearer Bonds" are not subject to the Connecticut succession tax under Chapter 149 of the Public Acts of 1925 as amended by Chapter 81 of the Public Acts of 1927.

In this opinion BANKS, J., concurred.