WILLIAM F. CONNELLY, TAX COMMISSIONER *v.* WIL-
LETT H. KELLOGG, JR., EXECUTOR (ESTATE OF
GERTRUDE L. KELLOGG)

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 8—decided August 16, 1949.

*Louis Weinstein,* inheritance tax attorney, with whom, on the brief, were *William L. Hadden,* attorney general, and *Frederic W. Dauch,* first assistant tax commissioner, for the plaintiff.

*David L. Daggett* and *Richard Hooker, Jr.,* for the defendant.

MALTBIE, C. J. The issue presented in this reservation is whether one-half the value of certain United States defense savings bonds issued in the names of "Willett H. Kellogg, Jr. or Mrs. Gertrude L. Kellogg" is taxable against him on the death of Mrs. Kellogg under the statute as to the taxation of jointly owned property. General Statutes, Sup. 1941, § 184f (Rev. 1949, § 2022). The facts stipulated are as follows: Mr. and Mrs. Kellogg were husband and wife. She died April 7, 1947. Between January 21, 1942, and December 12, 1944, he purchased seventeen United States defense savings bonds, series E, and caused them to be issued in the names we have stated. So far as regards the question involved in this case, the bonds were identical in character. A copy of one of them attached to the reservation contains on its face a statement that it is issued "pursuant to Treasury Department Circular No. 653, dated April 15, 1941, to which reference is made for a statement of the rights of holders, as fully and with the same effect as though herein set forth." Circular No. 653 states that bonds may be issued (a) in the name of one person, (b) in the names of two (but not more than two) persons as co-owners, and (c) in the name of one person payable on death to another designated person; and it further provides that series E bonds shall be subject to regulations prescribed by the secretary of the treasury to govern United States savings bonds and that the regulations are contained in Treasury Department Circular No. 530 (4th Rev.) dated April 15, 1941, copies of which can be obtained on application to the treasury department or any federal reserve bank. Ann. Rep. Secy. Treas. (1940-41) pp. 306, 307; cf. 31 Code Fed. Regs. § 316.5 (Cum.

Sup.). Circular No. 530 states somewhat more fully the three permissible forms of registration, and as to (b) it reads: "In the names of two (but not more than two) persons in the alternative as coowners, for example, 'John A. Jones OR Mrs. Ella S. Jones.' No other form of registration establishing coownership is authorized." It also contains the following provisions: "(a) *Payment or reissue.*—A savings bond registered in the names of two persons as coowners, for example, 'John A. Jones OR Mrs. Mary C. Jones,' will be paid or reissued as follows: (1) *During the lives of both coowners.*—During the lives of both coowners the bond will be paid to either coowner upon his separate request without requiring the signature of the other coowner; and upon payment to either coowner the other person shall cease to have any interest in the bond. The bond will also be paid to both coowners upon their joint request, in which case payment will be made by check drawn to the order of both coowners in the form, for example, 'John A. Jones *and* Mrs. Mary C. Jones,' and the check must be endorsed by both payees. The bond will not be reissued in any form during the lives of both coowners except as specifically provided in these regulations. (2) *After the death of one coowner.*—If either coowner dies without having presented and surrendered the bond for payment to a Federal Reserve Bank or the Treasury Department, the surviving coowner will be recognized by the Treasury Department as the sole and absolute owner of the bond, and payment will be made only to him: *Provided, however,* That if a coowner dies after he has properly executed the request for payment and after the bond has actually been received by a Federal Reserve Bank or the Treasury Department, payment of the bond, or check if one has been issued, will be made to his estate in accordance with the provisions of section 315.16 hereof.

Upon proof of the death of one coowner and appropriate request by the surviving coowner, the bond will be reissued in the name of such survivor alone, or (if not a minor or under any other legal disability) in his name payable on death to a designated beneficiary." Ann. Rep. Secy. Treas. (1940-41) pp. 320, 330; cf. 31 Code Fed. Regs. § 315.32 (Cum. Sup.).

Kellogg purchased the bonds with his own funds. He had no knowledge of circular No. 653 or any of the regulations of the treasury department. He intended to retain exclusive possession of the bonds and, if he died before his wife, to have them delivered to her as her sole property, and he believed that the form of registration of the bonds would effect that purpose. He did not intend to make a gift of any of them to her, but he would have given them to her at any time if she had been in need or made a reasonable request for them. Although he may have casually mentioned the purchase of some of them to her, he had no other conversation with her about them and she never requested their purchase or sought any interest in them. He placed them in an envelope marked with his name in a safe deposit vault, and they so remained until her death. In the same box were two other envelopes, one containing securities and papers belonging to her which was marked with her name and one containing certain property belonging to their son and marked with his name. The box was originally leased in the names of Kellogg and his wife, but subsequently the name of the son was added as an additional lessee, and he was given a right of access to it. Kellogg at all times paid the rental for the box. After January, 1942, Mrs. Kellogg had a key and right of access to the box but never went to it.

The statute concerning the taxation of jointly owned property, so far as material to the issue before us, pro-

vides: "Whenever property shall be held in the joint names of two or more persons and the survivor or survivors of them, the right of the survivor or survivors to the immediate ownership or possession and enjoyment of such property shall be a taxable transfer and the tax shall be computed as though a fractional part of the property, determined by dividing the fair market value of the entire property by the number of persons in whose joint names it was held, belonged absolutely to the deceased person and had been bequeathed or devised by him to the survivor or survivors by will. . . ." Sup. 1941, § 184f. In considering an earlier form in which the statute appeared (Public Acts, 1927, c. 81), we held in effect that it applied only to joint estates having the technical incidents of such estates. *Blodgett* v. *Union & New Haven Trust Co.,* 111 Conn. 165, 168, 149 A. 790. Even before our decision in that case was rendered, the statute had been amended so that the portion with which we are concerned took its present form. Public Acts, 1929, c. 299, § 3. In *McLaughlin* v. *Estate of Cooper,* 128 Conn. 557, 24 A. 2d 502, we considered the statute in its amended form. We pointed out that it was no longer restricted to joint estates. In that case C had deposited money in a bank in the names of himself and H, with right of survivorship, and H had deposited money of her own in two accounts in the names of herself and C, with right of survivorship; and we held that upon the death of C one-half of the deposits, after a certain deduction allowed by the statutes had been made, was taxable. The exact form in which the deposits were made does not appear in our decision, but (p. 561) we treated them as so created that C might, during their joint lives, "draw out the entire sum and so destroy not only his own interest in it but that of the other tenant"; and we said: "The right which a

survivor has, on the death of one of those in whose names the account stands, to succeed to the property is such an interest passing by death as to be properly subject to the succession tax."

In the present case, the bonds were payable to Kellogg or Mrs. Kellogg with no express provision of survivorship. They incorporated, however, by reference the treasury regulations governing their payment. These provided that, during the lives of the payees named, either might receive payment without regard to the other, who would thereupon cease to have any interest in them, and that, after the death of one, the other would become the sole owner, entitled to payment or reissue as though the bond had been registered in his or her name alone. No distinction can be drawn, as regards the application of the statute, between the situation now before us and that we considered in the *McLaughlin* case, supra.

Circular No. 653 was incorporated into the bonds by reference and that circular in turn incorporated the provisions of circular No. 530. Both were instrumental in the determination of the rights of Kellogg and his wife in the bonds. "The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract . . . it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so. . . ." *Ursini* v. *Goldman,* 118 Conn. 554, 562, 173 A. 789. Had Kellogg read the bonds with ordinary care, he would have noted that on the face of each of them reference was made to circular No. 653 "for a statement of the rights of holders, as fully and with the same effect as though herein set forth"; and if he had consulted circular No. 653, he would have found that the bonds were subject to the provisions of circular No. 530. The bonds show on their face that they were

purchased at a bank, and no doubt by inquiry there he would have been given the opportunity to consult the circulars; or, had he then endeavored to see them and failed, he would, in purchasing the bonds, have taken a chance as to the contents of the circulars. The fact that Kellogg had no actual knowledge of their provisions cannot avail him.

Nor can he avoid the application of the statute on the ground that he never intended to make a gift to Mrs. Kellogg of any interest in the bonds. He voluntarily created a situation where, if she had lived until their maturity, she might have presented them for payment and secured for herself the amount due on them. She had access to the safe deposit box where they were kept and could at any time have secured possession of them, and, under the regulations governing the respective rights of Kellogg and his wife, the government would have paid them upon presentation by her; and the fact that as between the two she may have had no right to hold them or their proceeds against him cannot alter the situation. If, under the statute now in question, it is necessary for its application to find an increment of value coming to him by reason of her death, it lies in the fact he is now, as a result of her death, relieved of the chance that, by her survival until the bonds matured, she might secure the money due on them, and that he can now secure their reissuance in his own name. See *Cochran* v. *Mc-Laughlin*, 129 Conn. 176, 183, 27 A. 2d 120.

The only decisions from another state involving the taxability, under a statute similar to ours, of war savings bonds where two persons were named co-owners which the industry of counsel has made available to us are by Pennsylvania courts. In *Graham's Estate*, 9 Monroe L. R. 89, the Orphans' Court held that the bonds were taxable to the amount of one-half their

value; and this was affirmed by the Supreme Court, although in that court the only issues presented were by reason of certain claims not involved in the case before us. *Graham's Estate,* 358 Pa. 383, 57 A. 2d 853. Two other cases involving the taxability of such bonds are not in point. In *Evan's Estate,* 57 Pa. D. & C. 55, the bonds were held taxable but on the basis of a transfer to take effect in possession and enjoyment at death; in *Heinlein's Estate,* 30 Erie Co. L. J. 27, CCH Inh., Est. & Gift Tax Rep., Pa., ¶ 1570.816, which Kellogg cites, the Orphans' Court merely held that the bonds purchased by a sister of the decedent and registered in the names of both were not taxable as forming a part of the estate of the decedent. *Walsh* v. *Hall,* 131 Conn. 345, 39 A. 2d 889, relied upon by Kellogg, does not support his position. In that case the decedent had created several joint savings bank accounts, naming various relatives as joint owners; she retained the books and, except in one instance, herself withdrew the interest; only one of the survivors knew that the accounts were in their names jointly with the decedent. The trial court concluded that the accounts were taxable to half their value under the statute we are now considering, and on the appeal the defendant administratrix conceded that to be so. The question presented to us upon the appeal was whether the trial court erred in holding that they were not taxable to their entire value as transfers made to take effect in possession or enjoyment at or after death; and we held that ruling to be wrong.

The single question propounded in the reservation asks whether or not one-half of the value of the bonds at the date of Mrs. Kellogg's death is subject to taxation under the provisions of § 184f of the 1941 Supplement to the General Statutes, and we advise that it is.

Costs in this court will be taxed as though the plaintiff had prevailed upon an appeal from an adverse judgment in the Superior Court.

In this opinion the other judges concurred.