WILLIAM DEXTER & another, trustees, & others, *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION.

Essex.    January 5, November 28, 1938. — April 27, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Taxation,* Succession tax.  *Statute,* Retroactive.  *Power.  Devise and
   Legacy,* Power.  *Constitutional Law,* Taxation.  *Words,* "Persons,"
   "Accruing."

In the provisions of § 36 of G. L. (Ter. Ed.) c. 65 that that chapter should
   "apply only to property or interests therein passing or accruing upon
   the death of persons dying on or after" May 4, 1920, "and as to all
   property and interests therein passing or accruing upon the death of
   persons who have died prior to said date the laws theretofore appli-
   cable shall remain in force," interpreted with respect to property which
   passed owing to the failure of a donee of a power, given in the will of
   one who died in 1874, to exercise the power by a written instrument
   effective at the donee's death in 1935, the word "persons" meant the
   generating source of the succession, the testator who died in 1874, and
   not the donee; and therefore said c. 65, considered apart from § 2
   thereof, was not applicable to the property so passing.
The word "accruing" in G. L. (Ter. Ed.) c. 65, § 36, has reference only
   to succession by survivorship in joint ownership, and not to succession
   to property under the will of a former owner thereof.
An interpretation of G. L. (Ter. Ed.) c. 65, as amended, or of St. 1916,
   c. 268, from which § 36 thereof was taken in substance, as imposing
   taxes upon direct successions by wills of testators dying before the
   effective date of the original direct legacy and succession tax statute,
   the predecessor of said c. 65, would require a conclusion of a legislative
   intent to make a radical change in established public policy, and no
   such intention appears.
An assessment of a succession tax under G. L. (Ter. Ed.) c. 65, §§ 1, 2,
   without applying the principle of aggregation required by § 1, upon
   property passing to a beneficiary in 1935 on the death of a donee of
   a power given in the will of one who died before 1907, where other
   property passed to the same beneficiary under the will of the donee,
   was void although employment of the principle of aggregation would
   have been unconstitutional by reason of the decision in *Binney* v.
   *Long,* 299 U. S. 280.

PETITION, filed in the Probate Court for the county of
Essex on June 15, 1937, for abatement of a succession tax.

The case was reserved and reported by *Dow,* J.

In this court, the case was argued on January 5, 1938, by F. H. Nash and R. Wait for the petitioners and by J. J. Ronan, then Assistant Attorney General, for the respondent, before *Rugg*, C.J., *Donahue, Qua, Dolan,* & *Cox*, JJ.; and, after the death of *Rugg*, C.J., was reargued on briefs submitted by F. H. Nash and R. Wait for the petitioners and by P. A. Dever, Attorney General, and E. O. Proctor, Assistant Attorney General, for the respondent to *Field*, C.J., *Donahue, Lummus, Qua, Dolan,* & *Cox*, JJ. Justices *Donahue* and *Cox* retired before the final decision.

FIELD, C.J. This is a petition brought under G. L. (Ter. Ed.) c. 65, § 27, in a Probate Court by the two trustees under the will of Charles H. Appleton, of Boston, who died April 3, 1874, and whose will was allowed June 1, 1874, and by his three grandchildren, against the commissioner of corporations and taxation, herein referred to as the commissioner. When the case came before the judge of probate for final determination, he found the facts to be as stated in a statement of agreed facts filed in the case, and reserved and reported the case under G. L. (Ter. Ed.) c. 215, § 13, without decision, for consideration of the full court upon the petition, the answer of the commissioner and the statement of agreed facts.

The mother of these grandchildren, Mrs. Meyer, of Hamilton, who was the daughter of Charles H. Appleton, died November 28, 1935, leaving a will allowed January 14, 1936, whereby she disposed of substantially all of her own property to her three children, who are her only heirs at law and next of kin. Legacy and succession taxes upon the estate of Mrs. Meyer owned by her and passing by her will have been paid in full and no controversy arises respecting them. The petitioners seek abatement of certain legacy and succession taxes assessed and collected upon successions to property passing by the will of Charles H. Appleton.

By the will of Charles H. Appleton a trust was created whereby the principal and income of the trust property, with certain modifications not now material, were disposed of as follows: His two daughters, Mrs. Meyer and Julia A. Appleton, were each given a life estate in the income of one

half of the trust property, but if either daughter died without issue, the surviving daughter was given a life estate in the income of the entire trust property. Each daughter was given a power of appointment, by written instrument effective at her death, to and among her children or issue, of one half of the trust property or of the entire trust property if the other daughter had previously died without issue. In default of appointment by either daughter one half of the trust property was to go to her children (or issue by right of representation) in equal shares, but if either daughter died without issue the entire trust property was to go in like manner to the children (or issue by right of representation) of the surviving daughter.

Julia A. Appleton died without issue. Mrs. Meyer survived her sister but did not exercise the power of appointment conferred upon her by the will of Charles H. Appleton. Therefore, the entire trust property upon the death of Mrs. Meyer on November 28, 1935, went in default of appointment to her children, the three individual petitioners, the youngest of whom was born April 7, 1891. Legacy and succession taxes, amounting to $39,626.85, upon the entire trust property were assessed by the commissioner purporting to act under G. L. (Ter. Ed.) c. 65 and St. 1935, c. 480, who certified them to the trustees under the will of Charles H. Appleton. The same persons, however, were executors of the will of Mrs. Meyer. The amount so certified together with interest was paid by the trustees. The petitioners contend that the imposition of such taxes is contrary to the statutes of this Commonwealth and the provisions of the Constitution of this Commonwealth and of the United States. They seek an abatement of the entire amount assessed.

So far as taxation of legacies and successions in this Commonwealth is concerned there have been, broadly, three periods: First, the period of no legacy and succession taxes. Second, the period of so called collateral legacy and succession taxes. Statute 1891, c. 425, imposed such taxes upon property of a decedent passing to collateral relatives and to certain other beneficiaries. No such taxes were imposed by this statute upon property passing to the husband or wife

or lineal descendants of the decedent. Third, the period of so called direct legacy and succession taxes. By St. 1907, c. 563, such taxes were imposed upon property of a decedent passing to the husband or wife and lineal descendants of the decedent as well as upon such property passing to collateral relatives of the decedent and to certain other beneficiaries. From time to time statutes were enacted changing these statutes in various particulars. Charles H. Appleton died during the first period — the period of no legacy and succession taxes. Mrs. Meyer died during the third period — the period of direct legacy and succession taxes.

The governing statutes at the death of Mrs. Meyer in 1935 are in G. L. (Ter. Ed.) c. 65, as amended — by changing the schedule of rates by St. 1933, c. 293, and by adding a provision relating to estates of nonresidents by St. 1933, c. 319 — and in St. 1935, c. 480, § 2, providing for a temporary additional tax. The material words of G. L. (Ter. Ed.) c. 65, as amended, are these: "Section 1. All property within the jurisdiction of the commonwealth, corporeal or incorporeal, and any interest therein, belonging to inhabitants of the commonwealth . . . [and certain property belonging to persons not such inhabitants], which shall pass by will, or by laws regulating intestate succession, or by deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth, made in contemplation of the death of the grantor or donor or made or intended to take effect in possession or enjoyment after his death, and any beneficial interest therein which shall arise or accrue by survivorship in any form of joint ownership in which the decedent joint owner contributed during his life any part of the property held in such joint ownership or of the purchase price thereof, to any person, absolutely or in trust, . . . shall be subject to a tax at the percentage rates fixed by the following table: . . . [A table of graduated rates appears based upon "Relationship of Beneficiary to Deceased," of which Class A included "Husband, wife, father, mother; child, adopted child, adoptive parent, grandchild," and the "Value of Property or Interest."] Provided, however, that no property or interest therein, which

shall pass or accrue to or for the use of a person in Class A, except a grandchild of the deceased, unless its value exceeds ten thousand dollars, and no other property or interest therein, unless its value exceeds one thousand dollars, shall be subject to the tax imposed by this chapter, and no tax shall be exacted upon any property or interest so passing or accruing which shall reduce the value of such property or interest below said amounts. All property and interests therein which shall pass from a decedent to the same beneficiary by any one or more of the methods hereinbefore specified and all beneficial interests which shall accrue in the manner hereinbefore provided to such beneficiary on account of the death of such decedent shall be united and treated as a single interest for the purpose of determining the tax hereunder. Section 2. Whenever any person shall exercise a power of appointment, derived from any disposition of property made prior to September first, nineteen hundred and seven, such appointment when made shall be deemed a disposition of property by the person exercising such power, taxable under section one, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by the donee by will; and whenever any person possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a disposition of property taxable under section one shall be deemed to take place to the extent of such omission or failure in the same manner as though the persons thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." "Section 36. This chapter shall apply only to property or interests therein passing or accruing upon the death of persons dying on or after May fourth, nineteen hundred and twenty, and as to all property and interests therein passing or accruing upon the death of persons who have died prior to said date the laws theretofore applicable shall remain in force; but so much of this

chapter as relates to property or interests therein passing by deed, grant or gift completed inter vivos in contemplation of death shall apply only to such deeds, grants or gifts made on or after May twenty-seventh, nineteen hundred and twenty." Statute 1935, c. 480, § 2, provides in part: "All property subject to a legacy and succession tax under the provisions of chapter sixty-five of the General Laws, as appearing in the Tercentenary Edition, and of any further amendments thereof or additions thereto, shall be subject to an additional tax of ten per cent of all taxes imposed by said provisions." This statute was approved August 13, 1935, and took effect upon its passage.

The legacy and succession taxes here in question were computed on the estate of Charles H. Appleton alone, separately and apart from the property and interests therein passing to the individual petitioners by reason of the death of their mother from her own estate. There is no dispute as to the value of the Appleton estate passing to them. The contention of the petitioners is that no legacy and succession taxes were due upon this estate.

The legacy and succession taxes here in question can be sustained, if at all, only under the provisions of G. L. (Ter. Ed.) c. 65, § 1, as amended, either (a) because brought within the scope of those provisions by the provisions of § 2 of the chapter or (b) apart from the provisions of said § 2. (The validity of the additional taxes assessed under St. 1935, c. 480, § 2, depends upon the validity of the other taxes and requires no independent consideration.) The principal, if not the sole, contention of the commissioner is that the legacy and succession taxes here in question were imposed by the provisions of G. L. (Ter. Ed.) c. 65, § 1, as amended, apart from the provisions of § 2 of that chapter. We, therefore, first consider this contention.

*First.* The legacy and succession taxes here in question cannot be sustained under the provisions of G. L. (Ter. Ed.) c. 65, § 1, as amended, considered apart from the provisions of § 2 of that chapter.

These legacy and succession taxes cannot be sustained under G. L. (Ter. Ed.) c. 65, § 1, as amended — considered

apart from § 2 of that chapter — unless the case is within the scope of said c. 65, as fixed by § 36 of that chapter. Said § 36, already quoted in full, provides, in part, that said c. 65 "shall apply only to property or interests therein passing or accruing upon the death of persons dying on or after May fourth, nineteen hundred and twenty." Charles H. Appleton, having died on April 3, 1874, was not a person dying on or after May 4, 1920. His daughter, Mrs. Meyer, however, died after May 4, 1920 — November 28, 1935. The matter to be decided in this aspect of the case is whether the word "persons" in this part of said § 36 as applied to the facts of the present case — apart from the provisions of G. L. (Ter. Ed.) c. 65, § 2 — refers to Charles H. Appleton or to his daughter, Mrs. Meyer. Is the application or nonapplication of said c. 65, as amended, to be determined by the date of the death of Charles H. Appleton or by the date of the death of his daughter, Mrs. Meyer? The commissioner contends, in substance, that the date that determines the application or nonapplication of said c. 65, as amended, is the date of the death of Mrs. Meyer, November 28, 1935, and consequently that said c. 65, as amended, is applicable to the present case.

We are of opinion, however, that the determining date is the date of the death of Charles H. Appleton, that upon the facts of this case he is the person whose death is referred to in said § 36, and that, since he died before May 4, 1920, said c. 65, as amended — considered apart from § 2 thereof — is not applicable to the present case and consequently that the taxes here in question cannot be sustained under G. L. (Ter. Ed.) c. 65, § 1, as amended, considered apart from said § 2.

Said § 36 must be interpreted in the light of other sections of said c. 65, as amended. And the intention of the Legislature in enacting G. L. (Ter. Ed.) c. 65, as amended, including § 36 thereof — or more properly G. L. c. 65, since G. L. (Ter. Ed.) c. 65 is not a revision or reënactment, but is merely a compilation of G. L. c. 65 and subsequent amendments prior to January 1, 1932 — "must be ascertained, not alone from the literal meaning of its words, but from a

view of the whole system of which it is but a part, and in the light of . . . previous statutes on the same subject." *Armburg* v. *Boston & Maine Railroad,* 276 Mass. 418, 426. Moreover, a "matter may be within the letter of a statute and not come within its spirit, . . . if to include it would require a radical change in established public policy or in the existing law and the act does not manifest any intent that such a change should be effected." *Commissioner of Corporations & Taxation* v. *Dalton,* 304 Mass. 147, 150. See *Boston* v. *Quincy Market Cold Storage & Warehouse Co.* 312 Mass. 638, 644. Furthermore, the "right to tax must be plainly conferred by the statute. It is not to be implied." *Cabot* v. *Commissioner of Corporations & Taxation,* 267 Mass. 338, 340. *Commissioner of Corporations & Taxation* v. *Williston,* 315 Mass. 648, 651.

We are of opinion that in the present case the legacy and succession taxes claimed by the commissioner are not within the terms of the statute interpreted in the light of other pertinent considerations although the words of said § 36 standing alone might conceivably be susceptible of a different meaning.

1. A legacy and succession tax is imposed upon the succession to property or an interest therein. Various kinds of successions are specifically described in G. L. (Ter. Ed.) c. 65, § 1, as amended. They are successions (a) "by will," (b) "by laws regulating intestate succession," (c) "by deed, grant or gift . . . [with a stated exception] made in contemplation of the death of the grantor or donor or made or intended to take effect in possession or enjoyment after his death," and (d) by the arising or accruing of a "beneficial interest" "by survivorship in any form of joint ownership in which the decedent joint owner contributed during his life any part of the property held in such joint ownership or of the purchase price thereof." In each instance the taxable succession is a succession to property or an interest therein "within the jurisdiction of the commonwealth" and "belonging to inhabitants of the commonwealth" or in certain instances belonging to persons not such inhabitants. A taxable succession of the fourth class, above described,

by the arising or accruing of a "beneficial interest" "by survivorship in any form of joint ownership" is a succession to "any beneficial interest therein," that is, in property and interests therein "belonging to inhabitants of the commonwealth" or, in certain instances, belonging to persons not such inhabitants.

2. Moreover, a taxable succession of each kind described in G. L. (Ter. Ed.) c. 65, § 1, as amended, is a succession to property or an interest therein of a deceased former owner. This is true, in substance, even of a succession "by survivorship in any form of joint ownership" though the deceased former owner was merely a joint owner and the "beneficial interest . . . which shall arise or accrue by survivorship in any form of joint ownership" may not technically be the same interest as was owned by the deceased joint owner. A legacy and succession tax, more specifically an excise, "is levied upon the succession to property which occurs upon the death of the former owner." *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 515. As was said in that case: "Such succession to property comprehends several elements. It includes not only the privilege exercised by the former owner to dispose of his property by will or grant, or to allow it to descend under the laws of intestate succession, but also the privilege enjoyed by the legatee, devisee, donee or heir to succeed to the title, possession and enjoyment of the property according to established laws." See also *Minot* v. *Winthrop*, 162 Mass. 113, 118, 124; *Crocker* v. *Shaw*, 174 Mass. 266, 267; *Attorney General* v. *Stone*, 209 Mass. 186, 190; *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 523–524, affirmed sub nomine *Saltonstall* v. *Saltonstall*, 276 U. S. 260. The excise is imposed "upon the right to receive property by reason of the death of the testator or donor." *First National Bank of Boston* v. *Commissioner of Corporations & Taxation*, 258 Mass. 253, 255. The death of the deceased former owner is the "generating source" of the succession. See *Coolidge* v. *Long*, 282 U. S. 582, 597. This principle is true even where the succession is "by deed, grant or gift . . . made in contemplation of the death of the grantor or donor or made or intended to

take effect .in possession or enjoyment after his death." Necessarily, such a "deed, grant or gift" is made in the lifetime of the grantor or donor, but the taxable succession does not occur until his death and occurs "by reason" of his death. See *Crocker* v. *Shaw*, 174 Mass. 266, 267. And the provisions of G. L. (Ter. Ed.) c. 65, § 2, imposing legacy and succession taxes upon successions to property subject to powers of appointment created before September 1, 1907, are not at variance with this principle. For the purposes of this section a donee of the power is treated — where there is jurisdiction to do so, see *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600 — as the owner of such property and his death is treated as the generating source of the succession. *Minot* v. *Treasurer & Receiver General*, 207 Mass. 588.

3. Though a taxable succession to property "occurs upon the death of the former owner" and "by reason" of his death, which is the generating source of the succession, the succession may not be completed at that time by the beneficiary entering into possession or enjoyment of the property, for the "succession comprehends as an essential part possession and enjoyment" of the property. *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 525. And until the succession is completed the Legislature has broad power to deal with it for the purposes of taxation as by providing for postponement of the time of payment of the legacy and succession tax thereon and for changing the time for valuing the property or interest therein to which a beneficiary succeeds. In *Attorney General* v. *Stone*, 209 Mass. 186, the court held constitutional a statute (St. 1902, c. 473, § 1) containing substantially such provisions, saying that until "the full exercise of such privilege [of succeeding to property] and while as yet no tax has been assessed and paid thereon, we see no reason why, by a general rule applicable to all such cases, any pending liability to taxation may not be regulated so as to subject it to a just and uniform method of assessment, even though some change may thereby be made from the method previously adopted" (page 190). And in *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 525, the court said that, since "the excise may be levied

upon the commodity known as succession, it may validly be imposed so long as any part of that commodity remains in existence." In the aspect of the present case now under consideration we are concerned not with the constitutional power of the Legislature but rather with the interpretation of the statute.

4. By G. L. (Ter. Ed.) c. 65, §§ 7, 13, embodying, in substance, the provisions of St. 1902, c. 473, § 1, held constitutional in the *Stone* case, it is provided that "in all cases where there shall be a devise, descent or bequest to take effect in possession or come into actual enjoyment after the expiration of one or more life estates or of a term of years, the taxes thereon shall be payable by the executors, administrators or trustees in office when such right of possession accrues, or, if there is no such executor, administrator or trustee, by the persons so entitled thereto, at the expiration of one year from the date when the right of possession accrues to the persons so entitled"; that taxes "imposed by this chapter upon property or interests therein, passing by deed, grant or gift to take effect in possession or enjoyment after the death of the grantor or donor, or upon beneficial interests arising or accruing by survivorship in any form of joint ownership, shall be payable by the grantee, donee or survivor at the expiration of one year from the date when his right of possession or enjoyment accrues"; that in "case of any deed, grant or gift of a life interest or term of years, the donee for life or years shall pay a tax only on the value of his interest, and the donee of the future interest shall pay his tax when his right of possession or enjoyment accrues" (§ 7); and that in "case of a devise, descent, bequest or grant to take effect in possession or enjoyment after the expiration of one or more life estates or of a term of years, the tax shall be assessed on the value of the property or interest therein coming to the beneficiary at the time when he becomes entitled to the same in possession or enjoyment" (§ 13). Nevertheless, that the succession occurs upon the death of the former owner of the property, even though the succession is not completed at that time and the tax thereon is not then due, is implied by G. L. (Ter. Ed.) c. 65, § 9,

providing, in part, that property "of which a decedent dies seized or possessed" subject to legacy and succession taxes "shall be charged with a lien for all taxes and interest thereon which are or may become due on such property" (see also § 15), a provision that, in substance, has been included in the statutes beginning with the collateral legacy and succession tax law. St. 1891, c. 425, § 4. A like implication — perhaps somewhat less strong — is to be drawn from the provision of G. L. (Ter. Ed.) c. 65, § 14, authorizing the settlement of legacy and succession taxes on future interests before such taxes would become due — a provision that, in substance, has been included in the statutes since 1902. St. 1902, c. 473.

That the taxable succession occurs upon the death of the former owner of the property, even though the succession is not completed until later, was recognized in the first case decided under the collateral legacy and succession tax law. *Minot* v. *Winthrop*, 162 Mass. 113. The statutes then contained no provision for postponement of the time of payment of the tax. In the *Minot* case the court sustained a tax upon the succession to the remainder in a trust fund although the preceding life estate had not terminated, and the effect of the payment of the tax on the remainder was to diminish both the principal of the trust fund and the income therefrom payable to the life tenant. The court said: "Perhaps a simpler way than that prescribed by the statute would have been to levy the tax at the end of the life estate upon the whole of the fund to be paid to the legatee in remainder, but the plan adopted is, we think, within the power of the Legislature, and . . . [the life tenant] must be held to take his life interest subject to the law" (page 125). Apparently this suggestion was followed by the Legislature in St. 1902, c. 473, § 1.

5. General Laws (Ter. Ed.) c. 65, § 36, is to be interpreted in the light of the fundamental principle that a taxable succession occurs at the death of the deceased former owner of the property that is the subject of the succession, a deceased joint owner of the property held in joint ownership or a deceased donee of a power of appointment, within the

scope of G. L. (Ter. Ed.) c. 65, § 2, being treated as such an owner. In the light of this principle the words "death of persons dying on or after May fourth, nineteen hundred and twenty," in the phrase in said § 36, "property or interests therein passing or accruing upon the death of persons dying on or after May fourth, nineteen hundred and twenty," naturally refer to the death of the former owners of the "property or interests therein." The word "persons" is a generic word applicable to all deceased former owners whose property or an interest therein passes or accrues by any of the forms of succession described in § 1 of the chapter.

6. The commissioner, however, seizes upon the word "accruing" in the phrase of said § 36 last quoted as indicating that the word "persons" also includes a tenant for life upon whose death the "right of possession accrues" or the "right of possession or enjoyment accrues" to the beneficiary (§ 7, see also § 13). The word "accruing," considered with its context in § 36 and with the other provisions of said c. 65, and in the light of the history of legacy and succession taxation in this Commonwealth, cannot rightly be given this effect. The particular purpose of said § 36 is to fix the date on or after which legacy and succession taxes shall be imposed by § 1 of said c. 65. Said § 1 imposes legacy and succession taxes upon four different kinds of successions — one of them, that "by deed, grant or gift," including two classes of successions — three of these kinds of successions being described by the words "property . . . and any interest therein, belonging to inhabitants of the commonwealth," and in some instances belonging to persons not inhabitants, "which shall pass" by the described kinds of successions. The fourth kind of succession is described as "any beneficial interest therein," that is, in "property . . . and any interest therein," so belonging, "which shall arise or accrue" by "survivorship in any form of joint ownership." And in the provisions of § 1 for exemptions the expression is used "no property or interest therein, which shall pass or accrue," and also the expression "so passing or accruing," the words "pass or accrue" and "passing or accruing" obviously being used

in the sense in which the words "pass" and "accrue" are used in the part of the section describing the several kinds of successions. Moreover, by St. 1924, c. 128, amending G. L. c. 65, § 1, as amended — passed before the decision in *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, later referred to herein — and now appearing as part of § 1 in G. L. (Ter. Ed.) c. 65, provision was made for the aggregation of "property and interests therein which shall pass from a decedent to the same beneficiary by any one or more of the methods hereinbefore specified and all beneficial interests which shall accrue in the manner hereinbefore provided," the words "pass" and "accrue" again obviously being used in the sense in which they are used in that part of said § 1 describing the various kinds of successions, that is, the word "pass" being used with reference to successions of the first three kinds there described and the word "accrue" being used with reference to the fourth kind of successions there described.

The· words "passing" and "accruing," in the phrase of said § 36 last quoted, as well as elsewhere in the section, are naturally to be interpreted in the sense in which different grammatical forms of these words are used in § 1, that is, in the sense that the word "accruing" applies only to successions by survivorship in joint ownership, while the word "passing" applies to other kinds of successions.

7. Thĕ only basis in G. L. (Ter. Ed.) c. 65, as amended, for an interpretation of the word "accruing," used in § 36, as applicable to any kind of succession other than successions by survivorship in joint ownership, is the use of the word "accrues" in the section of the statute (§ 7) referring to the accrual of a "right of possession" or a "right of possession or enjoyment." But in § 36 both the word "passing" and the word "accruing" refer to "property or interests therein," as is true of the words "pass" and "accrue" in § 1, and not to the "right of possession"· or the "right of possession or enjoyment," as is true of the word "accrues" in § 7 — materially different conceptions. See *Worcester County National Bank* v. *Commissioner of Corporations & Taxation*, 275 Mass. 216, 220–221, and cases cited. More-

over, if the word "accruing" in § 36 refers to the accruing of rights of possession or enjoyment, the section is incomplete, for a right of possession or enjoyment may accrue after a "term of years" as well as after "one or more life estates" (§ 7, see § 13), and under such interpretation § 36 would contain no provision applicable to the accruing of rights of possession or enjoyment upon the expiration of a "term of years," whether on or after May 4, 1920, or prior to said date, but the section would be applicable only to the accruing of rights of possession or enjoyment upon the death of a life tenant. If it had been intended that the question whether G. L. (Ter. Ed.) c. 65 was applicable to a particular case should be determined by the date at which the right of possession or enjoyment accrued to a beneficiary, the same rule would naturally have been made applicable to the accruing of a right of possession or enjoyment upon the expiration of a "term of years" as to such accruing upon the expiration of a life estate by reason of the death of the life tenant. Furthermore, in the special provision in said § 36 referring to successions by deed, grant or gift in contemplation of death, the word "accruing" is not used but only the word "passing," the apt word to describe such a succession, is used, although it may well be that in view of the nature of the statutory provision there would be no reason to use the word "accruing" however interpreted.

8. The commissioner relies to some extent on a statement in *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, 524, apparently not necessary for the decision of that case, with reference to the words of St. 1916, c. 268, § 4 — a section closely similar to G. L. (Ter. Ed.) c. 65, § 36 — "making the tax [imposed by said c. 268] applicable to property or interests 'passing or accruing' upon the death of persons subsequent to the act." "'Accruing' in this connection has some antithesis to 'passing,' and was intended to include the entering into 'possession or enjoyment' made subject to the tax by § 1" of said c. 268. This statement, however, is hardly consistent with the firmly established principle that a taxable succession "includes not only the privilege exer-

cised by the former owner to dispose of his property by will or grant, or to allow it to descend under the laws of intestate succession, but also the privilege enjoyed by the legatee, devisee, donee or heir to succeed to the title, possession and enjoyment of the property according to established laws," *Magee* v. *Commissioner of Corporations & Taxation,* 256 Mass. 512, 515, for the taxable successions other than succession by survivorship in joint ownership are described in G. L. (Ter. Ed.) c. 65, § 1, as amended, and in St. 1916, c. 268, § 1, and legacy and succession tax statutes generally by the words "property . . . and any interest therein . . . which shall pass" which describe the entire succession that occurs upon the death of the owner, although it is not then complete. If the statutory meaning is attributed to the word "passing" in § 36 — as we think should be done — and the word "accruing" in the section is interpreted as suggested in the *Saltonstall* case as including "the entering into 'possession or enjoyment,'" the section is self-contradictory as applied to a case where the former owner died before May 4, 1920, and the beneficiary did not enter into possession or enjoyment until May 4, 1920, or thereafter. Such a case, according to this meaning of the word "accruing," would be governed by G. L. (Ter. Ed.) c. 65, as amended, by reason of the "accruing" of possession or enjoyment on or after May 4, 1920, and also would be governed by the "laws theretofore applicable" by reason of the "passing" of property or interests therein before that date.

9. The foregoing analysis of G. L. (Ter. Ed.) c. 65, as amended, including § 36 thereof, leads to the conclusion that the word "accruing" in said § 36 has no application to any kind of succession other than successions by survivorship in joint ownership, that the word applicable to other kinds of successions is "passing," and that the phrase "property or interests therein passing . . . upon the death of persons" means "property or interests therein passing . . . upon the death of" the former owners of such property and interests, that is, in a case like the present case where the "passing" is by will, upon the death of the testator.

10. The conclusion here stated, reached upon an analysis of G. L. (Ter. Ed.) c. 65, as amended, including § 36 thereof, is supported by the broader considerations that statutes "are not to be construed as operating retroactively unless the legislative intention is clearly declared" (*Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 517), and that a statute is not to be interpreted so as to "require a radical change in established public policy or in the existing law" if "the act does not manifest any intent that such a change should be effected." *Commissioner of Corporations & Taxation* v. *Dalton*, 304 Mass. 147, 150. We discuss these considerations particularly in their bearing upon legacy and succession taxes imposed upon successions like the succession involved in the present case, a succession by the will of a person who died before the passage of the taxing statute, where the right of possession or enjoyment did not accrue to the beneficiary until after the passage of the taxing statute, though these considerations are of wider application.

11. A statute imposing legacy and succession taxes upon successions by the will of a person dying before its passage, even though the succession is not completed until after its passage, is in one aspect retroactive, although in another it may not be so regarded. See *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 517. In the present case the petitioners contend that the successions upon which the legacy and succession taxes were imposed were completed before the passage of G. L. (Ter. Ed.) c. 65, and consequently that these taxes were imposed retroactively and, therefore, were unconstitutional. See *Coolidge* v. *Long*, 282 U. S. 582, reversing *Coolidge* v. *Commissioner of Corporations & Taxation*, 268 Mass. 443. We need not, however, discuss the constitutional question involved, for, as an examination of earlier legacy and succession tax statutes discloses, the imposition of such taxes which are retroactive in the sense that they are imposed upon successions by wills of persons dying before the passage of the taxing statute would constitute a "radical change in established public policy" and "in the existing law" and G. L. (Ter. Ed.) c. 65, as amended, shows no intention to make such a change.

12. The "existing law" at the time G. L. c. 65, now appearing with amendments in G. L. (Ter. Ed.) c. 65, became effective, January 1, 1921 — which was the same as it was at the time said chapter was enacted, December 22, 1920, and at the times as of which, respectively, May 4, 1920, and May 27, 1920, according to the terms of § 36 thereof it became applicable — and the "public policy" "established" by previous legislation, appear from the following summary of legacy and succession tax statutes. At no time prior to the passage of St. 1916, c. 268, were legacy and succession taxes imposed upon any succession by the will of a testator who died before the passage of St. 1891, c. 425, the original collateral legacy and succession tax statute, or upon any succession by descendants of a testator — such as the beneficiaries in the present case — by the will of a testator who died before September 1, 1907, the effective date of the original direct legacy and succession tax statute. St. 1907, c. 563. See § 27. (This statement is not at variance with the provisions of St. 1909, c. 527, § 8, now embodied in G. L. [Ter. Ed.] c. 65, § 2, since for the purpose of legacy and succession taxes within the scope of this section the donee of the power is treated as a testator.) The commissioner properly concedes that St. 1907, c. 563, imposed no legacy and succession tax upon such a succession for § 25 of that statute provided expressly that the "act shall not apply to estates of persons deceased prior to the date when it takes effect." And clearly no change was made in this respect before the passage of St. 1916, c. 268.

For reasons similar to those already stated in analyzing and interpreting G. L. (Ter. Ed.) c. 65, particularly § 36, St. 1916, c. 268, cannot rightly be interpreted as changing the existing law so that legacy and succession taxes were imposed upon successions to property or interests therein by wills of testators dying before its passage and before the effective date of St. 1907, c. 563, September 1, 1907. Section 4 of said c. 268 provided that the act "shall apply only to property or interests therein passing or accruing upon the death of persons who die subsequently to the passage hereof [May 26, 1916]. Property or interests therein passing or

accruing upon the death of persons dying prior to the passage hereof shall remain subject to the laws then in force." If this section had the effect of changing the existing law so as to impose legacy and succession taxes upon successions not previously taxable by wills of testators who had died before the passage of the statute and before September 1, 1907, rendering taxable a succession by the will of a testator who, as here, died April 3, 1874, it was by reason of the word "accruing" in the first sentence of the section, for, in accordance with what has already been said, the "passing" of property or interests therein by the will of the testator occurred upon his death before May 26, 1916, and consequently such "passing" was not within the scope of said c. 268. But the word "accruing" cannot bear the heavy burden of changing existing law so as to impose legacy and succession taxes upon such successions, where, as here, there is no other indication of a legislative intention to impose such taxes.

The word "accruing" as used in said § 4 of c. 268 must be interpreted in the light of the other provisions of the chapter. This chapter, in addition to making certain changes in the law not here significant, was enacted for two purposes. One of these purposes, effected by substituting by § 1 thereof a new § 1 in St. 1907, c. 563, as codified and amended, was to subject to taxation a kind of successions that had not previously been taxable — successions defined by the words "any beneficial interest therein [that is, in "property . . . and any interest therein, belonging to inhabitants of the commonwealth" and certain property belonging to persons not such inhabitants] which shall arise or accrue by survivorship in any form of joint ownership," subject to a described limitation. Doubtless the provision imposing taxes upon such successions was added to the statute by reason of the decision in *Attorney General* v. *Clark*, 222 Mass. 291, to the effect that such successions were not taxable under previous law. In defining by St. 1916, c. 268, § 1, this kind of successions, the Legislature used the words "arise or accrue" instead of the word "pass" used in defining all other kinds of successions, apparently for the reason that the word

"pass" was thought not to describe accurately successions by survivorship in joint ownership. Apparently the word "accrue" was used in said § 1 to describe such successions, in part, at least, because of the use of the word "accruing" in *Attorney General* v. *Clark*, 222 Mass. 291, 294, as descriptive of such a succession. The words "arise or accrue" clearly had no application to other kinds of successions. Another purpose of substituting by St. 1916, c. 268, § 1, a new § 1 in St. 1907, c. 563, as codified and amended, was to change the schedule of rates. In the new schedule of rates based upon the value of property and interests therein and upon relationship or nonrelationship of the beneficiaries to the decedent, the formula for determining the rates in each instance was that, in "case such property or interest therein shall so pass or any beneficial interest therein shall so accrue to or for the benefit of" described beneficiaries, the tax should be at certain designated rates. This formula recognized the distinction between the word "pass" and the word "accrue" and was designed to bring within the schedule of rates successions of the kind first made taxable by said c. 268. Here, clearly, the word "accrue" had no application to other kinds of successions, such as a succession by will, to which the word "pass" was applicable.

Section 2 of St. 1916, c. 268, substituted a new § 4 in St. 1907, c. 563, as codified and amended. This section in both its old and its new form dealt with the time for payment of legacy and succession taxes and the persons liable therefor, and the section in its new form contained such a provision applicable to the kind of successions first made taxable by said c. 268, and to successions by deed, grant or gift. But in this provision the word "passing" was used with reference to successions by deed, grant or gift and the words "arising or accruing" were used with reference to successions by survivorship in joint ownership. There were, however, in this section in its new form, as had been true of this section since the original enactment of St. 1907, c. 563, instances where the word "accrues" was used with reference to the accrual of a "right of possession" or a "right of possession or enjoyment." The use of the word "accruing" in the new

§ 4 relating to property or interests therein, as distinguished from rights of possession or of possession or enjoyment, was consistent with the use of the word "accrue" in the new § 1 as applicable only to successions by survivorship in joint ownership, while the word "passing" was used as applicable to all other kinds of successions. In view of this consistent use of these words in different grammatical forms in the other parts of St. 1916, c. 268, the conclusion naturally follows that the same distinction between "passing" and "accruing" was intended to be made in § 4 thereof, and consequently that the word "accruing" in this section had no application to successions other than successions by survivorship in joint ownership, and so had no application to a succession by will such as is here involved.

Stress is laid by the commissioner upon the fact that the language of St. 1916, c. 268, § 4, is different from the language of St. 1907, c. 563, where it was provided that the statute should "not apply to estates of persons deceased prior to the date when it takes effect" (§ 25). A natural explanation for the change in language is that the Legislature may have doubted whether property or interests therein in joint ownership, successions to beneficial interests in which were first made taxable by St. 1916, c. 268, were technically part of the estate of a deceased joint owner (see *Attorney General v. Clark*, 222 Mass. 291, 295), and consequently used in said § 4, for greater caution, language that clearly would include successions to such beneficial interests. Statute 1916, c. 268, merely amended St. 1907, c. 563, as codified and amended, except in one instance where a part of said c. 563 was repealed. But there is no express repeal of § 25 of said chapter. And the "parts of the original statute which are inconsistent with the amended statute, and those only, are repealed by implication." *Wilson* v. *Head*, 184 Mass. 515, 517. *McAdam* v. *Federal Mutual Liability Ins. Co.* 288 Mass. 537, 541. Repeal by implication is not favored. *Commonwealth* v. *Bloomberg*, 302 Mass. 349, and cases cited. No implication of a repeal of said § 25 is to be drawn from St. 1916, c. 268, § 4, or any other part of the statute, especially where, as here, such a repeal would make a radical change in exist-

ing law. Moreover, the obvious purposes of St. 1916, c. 268, were to make corrections in existing law, particularly by extending its application to a kind of successions not previously taxable, and to change the schedule of rates of tax. The statute is naturally to be interpreted as making only these changes and not as making the further radical change for which the commissioner contends. *New England Trust Co.* v. *White*, 224 Mass. 332, 335–336.

Statute 1920, c. 396, passed May 4, 1920, made changes in the law applicable to the taxation of successions to property and interests therein not belonging to inhabitants of the Commonwealth, and in so doing amended St. 1907, c. 563, § 1, as codified and amended, and made certain procedural changes, many, if not all of them, applicable to such property and interests therein. It provided that the statute "shall apply only to the estates of persons dying on or after the date of its passage" (§ 6). Statute 1920, c. 548, passed May 27, 1920, substituted a new paragraph in St. 1907, c. 563, § 1, as codified and amended, for the purpose of imposing legacy and succession taxes upon successions to property and interests therein by deed, grant or gift made in contemplation of death, and made certain provisions applicable to such successions. It provided that the statute should "not apply to property or interests therein passing by deed, grant or gift in contemplation of death made prior to the passage of this act" (§ 3). These statutes disclose no legislative intention that they, or the statutes that they amended, should impose legacy and succession taxes upon successions resulting from the death of a former owner of property or interests therein who died before the passage of these statutes. There was no further legislation upon the subject of legacy and succession taxes before the revision of the statutes relating to legacy and succession taxes by G. L. c. 65.

The "existing law" — considered apart from St. 1909, c. 527, § 8, now embodied in G. L. (Ter. Ed.) c. 65, § 2 — at the time that G. L. c. 65 became effective, did not impose legacy and succession taxes upon successions by wills of testators who — as in the present case — had died before

the effective date of St. 1907, c. 563, September 1, 1907, except so far as such successions were taxable under the collateral legacy and succession tax law. St. 1891, c. 425, codified in R. L. c. 15. And said R. L. c. 15 imposed no legacy and succession taxes upon the successions involved in the present case both because the testator died before the effective date of the original collateral legacy and succession tax law, St. 1891, c. 425, and because the beneficiaries were lineal descendants of the testator.

13. The general principle that a statute is not to be interpreted so as to "require a radical change . . . in the existing law" if the statute does not disclose an intention that such a change shall be effected (*Commissioner of Corporations & Taxation* v. *Dalton,* 304 Mass. 147, 150) is applicable with special force in the case of a general revision of the laws. *Medford Trust Co.* v. *McKnight,* 292 Mass. 1, 28. "G. L. c. 65, which was a general revision of the laws relating to taxation of legacies and successions, is to be construed as continuing the previous laws, except in the respects in which a change is indicated." *Worcester County National Bank* v. *Commissioner of Corporations & Taxation,* 275 Mass. 216, 218. No change was indicated by G. L. c. 65 with respect to the application of this chapter to successions by wills of testators dying before the date as of which it was applicable to successions of this kind, May 4, 1920. On the contrary, § 36 of the chapter fixing the dates as of which the chapter should be applicable followed closely the language of St. 1916, c. 268, § 4, which, for reasons already stated, did not make that statute applicable to successions by wills of persons dying before its passage, and even more clearly did not make that statute applicable to successions by wills of persons dying before the effective date of St. 1907, c. 563, September 1, 1907. The references in G. L. c. 65, § 36, to the dates May 4, 1920, and May 27, 1920, the dates respectively of the passage of the latest statutes prior to the revision by G. L. c. 65, relating to legacy and succession taxes, furnish a further indication that in enacting G. L. c. 65, the Legislature did not intend to change the statutes but intended merely to codify them. General

Laws c. 65 did not change the existing law that successions by wills of testators dying before September 1, 1907, were not subject to legacy and succession taxes under the direct legacy and succession tax law (St. 1907, c. 563, as codified and amended), and that successions by wills of testators dying before the effective date of the original collateral legacy and succession tax in 1891 were not subject to legacy and succession taxes under that statute. And of course no change in the statutes was made by the compilation of the legacy and succession tax statutes in G. L. (Ter. Ed.) c. 65, which was never enacted by the Legislature. No statute intervening between G. L. c. 65 and G. L. (Ter. Ed.) c. 65 made any change in the law that is significant with respect to the matters here involved.

14. An interpretation of G. L. (Ter. Ed.) c. 65, as amended, or of St. 1916, c. 268, from which the language of G. L. (Ter. Ed.) c. 65, § 36, was taken in substance, as imposing legacy and succession taxes upon successions by wills of testators dying before 1907 (St. 1907, c. 563), would "require a radical change in established public policy" (*Commissioner of Corporations & Taxation* v. *Dalton*, 304 Mass. 147, 150), as disclosed by legislation. And an intention to make such a change is not manifested.

Nothing in the collateral legacy and succession tax statutes as originally enacted, St. 1891, c. 425, or as amended, warranted an interpretation of those statutes as retroactive in this sense, and we are not aware that it was ever contended that these statutes should be so interpreted. The original direct legacy and succession tax statute, St. 1907, c. 563, by its express terms was not so retroactive. § 25. Statute 1909, c. 490, Part IV, was a codification of the direct legacy and succession tax statutes. It is an almost verbatim copy of St. 1907, c. 563, except for provisions with respect to its application. In form it was retroactive to September 1, 1907, the effective date of St. 1907, c. 563, but, in substance, so far as imposing legacy and succession taxes was concerned, it merely codified without change the provisions of St. 1907, c. 563, and did not impose such taxes retroactively. Statute 1909, c. 527, § 8, now embodied in G. L.

(Ter. Ed.) c. 65, § 2, relating to the taxation of successions resulting from the exercise or nonexercise of powers of appointment created prior to the effective date of St. 1907, c. 563, was, in effect, a recognition that said c. 563 was not applicable to successions by wills of testators dying before its effective date, but treated the deaths of donees of powers created prior to the effective date of St. 1907, c. 563, as the generating sources of the successions and did not purport to impose legacy and succession taxes retroactively upon such successions from donees who died prior to the passage of said c. 527, § 8. General Laws c. 65, itself, as provided by § 36 thereof, was in form retroactive to dates — May 4, 1920, and May 27, 1920 — before the effective date of c. 65, January 1, 1921, but, in substance, it was not retroactive since it merely codified the statutes relating to legacy and succession taxes as of the dates respectively of the latest statutes on the subject. St. 1920, c. 396. St. 1920, c. 548.

The only true departure from the established policy of the Commonwealth not to impose legacy and succession taxes upon successions by the will of a former owner dying before the passage of the taxing statute by any statute involved in any case before this court was by the statute considered in *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512. That statute, which was passed on July 22, 1919, provided that a statute that expired on May 3, 1919, imposing an additional tax upon successions, was "revived and re-enacted, and made applicable to property or any interest therein passing or accruing upon the death of persons who died subsequent to the passage hereof and within one year thereafter *or who have died in the interval between the third day of May in the current year and the date of said passage.*" (Italics supplied.) Thus the statute was made retroactive for a brief period by express provision. The court held the statute constitutional as applied to the case of a testatrix who died July 6, 1919, on the ground that "the tax was imposed upon a commodity still in existence when the statute went into effect" (page 517). No other statute of this nature has come to our attention. An occasional slight departure of this kind from a general course of

legislative practice does not outweigh the effect of the general course of legislative practice as indicating the established policy of the Commonwealth. Statutes dealing with procedural matters (see *Attorney General* v. *Stone*, 209 Mass. 186) or granting exemptions applicable to cases in which the tax remained unpaid at the date of the passage of the statute (see, for example, St. 1905, c. 470; St. 1906, c. 436) are not true departures from established policy.

Nothing in G. L. (Ter. Ed.) c. 65, as amended, manifests any legislative intention to depart from the established policy of the Commonwealth not to impose legacy and succession taxes upon successions to property or any interests therein generated by the death of the former owner of the property before the passage of the taxing statute.

15. The cases relied on by the commissioner are not in conflict with the conclusion here reached. See *Saltonstall* v. *Treasurer & Receiver General*, 256 Mass. 519, affirmed sub nomine *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 267 Mass. 240; *Binney* v. *Commissioner of Corporations & Taxation*, 293 Mass. 96, affirmed, as to the 1877 trust, sub nomine *Binney* v. *Long*, 299 U. S. 280, 286, 288; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 294 Mass. 551, 553. All these cases involved succession by "deed, grant or gift, . . . made or intended to take effect in possession or enjoyment after the death of the grantor or donor," and in each case the grantor or settlor did not die until after the passage of the applicable taxing statute. Notwithstanding the fact that such a "deed, grant or gift" is made in the lifetime of the grantor or settlor, his death is the generating source of the succession, as is the death of a testator in the case of a succession by will. In no one of these cases was a statute interpreted as imposing a legacy or succession tax upon a succession from a grantor or settlor who had died before the passage of the taxing statute.

We conclude, therefore, that G. L. (Ter. Ed.) c. 65 — considered apart from § 2 thereof — was not made applicable by § 36 of that chapter to successions by the will of Charles

H. Appleton, who died April 3, 1874, and that the legacy and succession taxes here in question cannot be sustained under G. L. (Ter. Ed.) c. 65, § 1, as amended, considered apart from § 2 of this chapter.

*Second.* General Laws (Ter. Ed.) c. 65, § 36, provides, in part, that "as to all property and interests therein passing or accruing upon the death of persons who have died prior to said date [May 4, 1920] the laws theretofore applicable shall remain in force." It follows from what has already been said with respect to the laws applicable before May 4, 1920, that the legacy and succession taxes here in question cannot be sustained under those laws considered apart from St. 1909, c. 527, § 8, now embodied in G. L. (Ter. Ed.) c. 65, § 2.

*Third.* The legacy and succession taxes here in question cannot be sustained under the provisions of G. L. (Ter. Ed.) c. 65, § 1, as amended, because brought within the scope thereof by § 2 of said chapter.

1. At the original argument of this case, the commissioner contended that the legacy and succession taxes here in question should be sustained under c. 65, § 1, as amended, because brought within the scope of that section by § 2 of the chapter, but that if they could not be so sustained they should be sustained under said § 1, considered apart from said § 2. Upon reargument, however, the commissioner abandoned the contention that these legacy and succession taxes should be sustained under the provisions of G. L. (Ter. Ed.) c. 65, § 1, as amended, because brought within the scope of this section by § 2 of the chapter, and not merely conceded but contended that these legacy and succession taxes could not be so sustained, contending that said § 2 should be regarded as excised from said c. 65 by reason of the decision against the constitutionality of said § 2 in *Binney* v. *Long*, 299 U. S. 280. The petitioners also contend that said § 2 is unconstitutional. Since, however, we hold that these legacy and succession taxes cannot be sustained under G. L. (Ter. Ed.) c. 65, § 1, as amended, considered apart from § 2 of the chapter, and the concession of the commissioner that they cannot be sustained under said § 1,

as amended, because brought within the scope thereof by said § 2 is, in effect, a concession that said § 2 is unconstitutional, we think that the case should not be disposed of on the basis of this concession but that the matter should be considered upon the merits so far as the merits necessarily involve the question of the constitutionality of said § 2. All rational presumptions are made in favor of the validity of every legislative enactment (*Moore* v. *Election Commissioners of Cambridge*, 309 Mass. 303, 311–312), and these presumptions are not met by a concession by a public officer of the unconstitutionality of a statute.

2. The situation in the present case falls exactly within the terms of the part of G. L. (Ter. Ed.) c. 65, § 2, already quoted in full, providing that "whenever any person possessing" a "power of appointment, derived from any disposition of property made prior to September first, nineteen hundred and seven," "shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a disposition of property taxable under section one shall be deemed to take place to the extent of such omission or failure in the same manner as though the persons thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." Mrs. Meyer had a power of appointment "derived" from the "disposition of property" by her father by his will, and this "disposition of property" was made by him as of the date of his death, April 3, 1874 — long before September 1, 1907. Although the power of appointment was a limited one it was within the terms of this section. *Burnham* v. *Treasurer & Receiver General*, 212 Mass. 165. The power of appointment was to be exercised by the donee by her will or by some other written instrument effective at her death. Mrs. Meyer died without exercising the power of appointment. Consequently, the appointive property passed in default of appointment to the three children of Mrs. Meyer. According to the terms of the section these children are to be treated as if they had succeeded to this property by a will

of Mrs. Meyer taking effect at her death.   Mrs. Meyer also left individual property that passed by her will to her three children.

3. In determining whether the property passing in default of appointment to the three children of the donee of the power of appointment is subject to legacy and succession taxes by reason of the provisions of G. L. (Ter. Ed.) c. 65, § 2, this court is governed by the decision of the Supreme Court of the United States in *Binney* v. *Long,* 299 U. S. 280, so far as that decision is applicable to the facts of the present case, unless that decision has been overruled or modified.

The *Binney* case involved three trusts, herein referred to respectively as "the 1862 trust," "the 1877 trust," and "the 1891 trust."   The facts in the *Binney* case, with relation to "the 1891 trust" (page 292), were substantially the same as the facts in the present case.   A testatrix dying May 27, 1891, by her will created a trust, the income thereof to be paid to her daughter for life, who was also given a limited power to appoint by will among her children and the issue of deceased children.   In default of such appointment the property was to go to such children and the issue of deceased children.   The donee died August 20, 1931, without exercising the power of appointment, having died intestate.   Consequently, the children of the donee of the power of appointment succeeded to interests in the trust property under the terms of the will of the donor by reason of the failure of the donee to exercise the power of appointment.   The donee left substantial individual property to which her children succeeded under the laws regulating intestate succession.   The children also succeeded to property under the terms of the other two trusts.   One of these two trusts, "the 1862 trust" (page 288), was created by an inter vivos transfer made by the father of the donee under "the 1891 trust" by which also she was given a power of appointment by will, in default of the exercise of which the appointive property was to go to her children and the issue of her deceased children.   This power was not exercised and consequently her children succeeded to this property.   Legacy and succession taxes were certified and paid upon the prop-

erty to which each of the children succeeded, including the individual property of the donee and the property to which they succeeded under the terms of the three trusts. The rates at which these taxes were computed were determined by aggregating the property and interests therein to which each child succeeded in these various ways.

This court in *Binney* v. *Commissioner of Corporations & Taxation*, 293 Mass. 96, sustained the legacy and succession taxes as certified and paid, denying abatement thereof wholly or in part. The Supreme Court of the United States, however, in *Binney* v. *Long*, 299 U. S. 280, reversed this decision so far as it related to "the 1891 trust" as well as to "the 1862 trust," but not so far as it related to "the 1877 trust."

The governing statutes in force at the date of the death of the decedent, the donee of the powers, in the *Binney* case — 1931 — were the same as those in force at the date of the death of the decedent, the donee of the power, in the present case — 1935 — except for immaterial changes made in 1933 and the imposition of a temporary additional tax in 1935. In each case the governing statute was G. L. c. 65, with subsequent amendments up to the dates of the deaths of the decedents respectively. The statutes enacted prior to January 1, 1932, were compiled in G. L. (Ter. Ed.) c. 65, which was not a revision or reënactment. Since this compilation included no statute passed after the date of the death of the decedent in the *Binney* case on August 20, 1931, G. L. (Ter. Ed.) c. 65 may be treated as setting forth the statutory law at that date. The provision contained in § 1 of this chapter, relating to the aggregation of property and interests therein for the purpose of computing legacy and succession taxes, was enacted by St. 1924, c. 128, by adding to G. L. c. 65, § 1, a provision relating to the aggregation of property and interests therein in precisely the terms in which this provision appears in G. L. (Ter. Ed.) c. 65, § 1.

In the part of the opinion of the Supreme Court of the United States in the *Binney* case relating particularly to "the 1891 trust," the court said: "The act of 1909 . . . [embodied in G. L. c. 65, particularly § 2, and appearing

in G. L. (Ter. Ed.) c. 65, § 2, already quoted] recognizing that the act of 1907 . . . [St. 1907, c. 563, effective September 1, 1907, particularly § 1 thereof, embodied with amendments thereof in G. L. c. 65, § 1, and appearing with further amendments thereof in G. L. (Ter. Ed.) c. 65, § 1] does not apply to the succession generated at the death of . . . [the testatrix, the donor of the power], nevertheless pitches upon the fact ·that under her will the intestate had a power of appointment and makes the takers of . . . [the donor's property] in succession to the intestate liable for a tax as if the property had descended from the intestate. As directed by § 1 [of G. L. (Ter. Ed.) c. 65, embodying the provisions of St. 1924, c. 128] the appellee [the commissioner] aggregated the interest falling to the appellants [the children of the donee of the power taking in default of the exercise thereof] under their grandmother's [the donor's] will with that coming to them from their mother under the intestate law. Thus, the interest derived under the 1891 trust is taxed in the higher brackets at four per cent. whereas had it been created by a will effective after September 1, 1907, the tax would be computed as upon a succession to . . . [the donor's] estate alone, and at a rate of one per cent. The same considerations which have been stated in respect of the 1862 trust are controlling as to this one.[1]

---

[1] The considerations stated in the *Binney* case in respect of "the 1862 trust" were, in substance: "The 1862 contract was not made in contemplation of the grantor's death; it became effective when executed. Such a transfer made to-day would result in no tax upon the interest acquired by the life tenant or upon those interests resulting from her exercise or non-exercise of her power of appointment. By the act of 1909, however, (§ 2, *supra*) the legislature, while not attempting to tax the interests of the appellants as derived in succession to . . . [the grantor], does essay to tax those interests as derived from the intestate as the holder of a power of appointment under . . . [the grantor's] contract. But the statutes do not tax similar interests the enjoyment of which depends upon the exercise or non-exercise of a power embodied in a deed effective after September 1, 1907. The law, therefore, creates two classes, — the one composed of beneficiaries who take at the death of the donee of a power created by an instrument antedating 1907, who are taxed, — and the other of beneficiaries who take in succession to the donee of a power conferred by a deed executed subsequent to 1907, who are not taxed. Upon its face the statute arbitrarily selects a past date, taxing the beneficiaries of an act if done prior to, and leaving untaxed beneficiaries of a precisely similar act if done subsequent to that date. . . . The succession to non-testamentary gifts made subsequent to the effective date of the act of 1907 is not taxed whether the person coming into ownership and enjoyment of property does so by virtue of the direct gift of the former owner or by virtue of the exercise or non-exercise of a power of appointment vested by

We think it an arbitrary and unreasonable discrimination that the beneficiary of a power must aggregate the interest so derived with that enjoyed by inheritance of property owned in fee by the donee of the power, if the instrument creating the power antedates 1907, but need not so aggregate the interests for the purpose of taxation if the creation of the power be subsequent to 1907. The consequence that the one must pay at a higher rate on the interest falling in at the death of the donee of the power than the other who takes by reason of an exactly similar event, denies the equal protection of the law to the former. . . . The claim is that the discrimination against the appellants is justified by either or both of these principles [that is, that "the discrimination is founded upon a reasonable distinction," or is the result of "inadvertence"]. While this court always accords great weight to the judgment of a state legislature, we cannot agree that there is here a fair basis for difference of treatment. . . . The alternative and inconsistent contention that the discrimination is the result of inadvertence, cannot prevail" (pages 292–294).

---

the former owner in a third party. Thus the future policy of the Commonwealth is declared to be that those who benefit by a testamentary gift are to be taxed while those who benefit, either immediately or remotely, from a complete and irrevocable gift *inter vivos* are not to be taxed. On the other hand, the statutes declare that one who benefits remotely through the exercise or non-exercise of a power under an absolute gift long since completed is to bear the burden of the exaction. This is not the declaration of a new policy effective after the promulgation of the legislation. On the contrary the statutes declare the policy to be the exemption for the future of a well-known type of succession, while at the same time imposing a tax on the identical type if resulting from a past gift. . . . As we have noted, the only basis for the classification is the time when the estate was created. . . . We fail to see how fairness, either to the Commonwealth or its citizens, is promoted by taxing the appellants, the beneficiaries of a trust made many years before the succession tax laws were adopted, while exempting beneficiaries similarly situated in all respects save only that the trust was created after September 1, 1907. The discrimination becomes the more glaring when it is remembered that the tax is increased by the aggregation of the interest passing to the beneficiaries under the 1862 contract with that which they derive by inheritance from the intestate. Thus, a beneficiary taking through a power under an *inter vivos* non-testamentary trust, created after September 1, 1907, would not have to aggregate the interest so derived with property inherited from the donee of the power, whereas one taking, as do the appellants, under a power in a deed executed in 1862 is compelled, by aggregation of the interests, to pay at a much higher rate on the property derived through the power. In view of the hostile discrimination against a class of remaindermen arbitrarily singled out for taxation from all those similarly situated, we are bound to hold the statutes deny the equal protection of the laws in contravention of the Fourteenth Amendment" (pages 288–292).

It is clear that the fundamental ground of the decision in the *Binney* case, as to both "the 1891 trust" and "the 1862 trust," was that the different treatment by G. L. (Ter. Ed.) c. 65, § 2, for purposes of taxation of successions to property by reason of the exercise or nonexercise of powers of appointment created before September 1, 1907, and of successions to property by reason of the exercise or nonexercise of powers of appointment created after that date, was arbitrary and was not based upon any reasonable distinction. The court made no intimation that the method of taxing successions to property prescribed by said § 2 was constitutionally objectionable on any ground other than the arbitrary and unreasonable discrimination made by this section between powers of appointment created before September 1, 1907, and powers of appointment created after that date, affecting adversely persons who succeeded to property by reason of the exercise or nonexercise of powers of appointment of the former class. The court held that an unconstitutional discrimination resulted in "the 1862 trust" because legacy and succession taxes were imposed upon successions resulting from the nonexercise of a power of appointment created before September 1, 1907, while no such taxes whatever were imposed upon like successions resulting from the nonexercise of a power of appointment created after September 1, 1907, and that an unconstitutional discrimination resulted in "the 1891 trust" because legacy and succession taxes were imposed upon successions resulting from the nonexercise of a power of appointment created before September 1, 1907, at higher rates by reason of the aggregation of property and interests therein than the rates applicable to like successions resulting from the nonexercise of a power of appointment created after September 1, 1907. The court reached its decision with respect to "the 1891 trust" upon the ground of the unconstitutional discrimination resulting from the aggregation of property and interests therein without specifically pointing out any other unconstitutional discriminatory feature. And the court did not state specifically whether these taxes upon the successions resulting from the nonexercise of the power were wholly invalid, or

were invalid only to the extent that the amounts thereof resulted from the aggregation of property and interests therein. The conclusion of the court was that the "judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion" (page 295). But the dissenting justices apparently considered that the opinion of the court "reduces the amount of the tax under the will of 1891" (page 295). The court, however, did not hold that the aggregation of property and interests therein in a proper case is constitutionally objectionable. Indeed, in dealing with "the 1877 trust" and sustaining the tax upon successions to property thereunder the court affirmatively held that there was "no constitutional objection to the statutory provisions for uniting the interest thus derived with that which the appellants acquired in . . . [the intestate's] own property at her death, and calculating the rate on the total according to a sliding scale" (page 288). See also *Whitney* v. *State Tax Commission of New York*, 309 U. S. 530, 540.

4. The decision in the *Binney* case with respect to "the 1891 trust," that the legacy and succession taxes imposed upon successions to property and interests therein resulting from the nonexercise of the power of appointment were invalid by reason of the aggregation of such property and interests therein for the purpose of taxation with interests in the individual property of the donee to which the same beneficiaries succeeded by the laws regulating intestate succession, has not been overruled or modified by any later decision of the Supreme Court of the United States. In *Whitney* v. *State Tax Commission of New York*, 309 U. S. 530, 542, the court sustained an estate tax imposed by a New York statute making a change in the State tax law relating to death duties applicable only to a narrow class of cases involving special powers of appointment created prior to a fixed date. With respect to the *Binney* case the court said: "Acceptance of *Binney* v. *Long*, 299 U. S. 280, would not constrain us to hold differently. In the circumstances confronting the New York Legislature, as the Court of Appeals pointed out, the discrimination affecting special powers was

not based upon what was deemed in the *Binney* case to be a date 'arbitrarily selected but is a logical solution by the Legislature of a problem which it was required to meet.' 281 N. Y. at 317." While this statement may not import acceptance of the *Binney* case, it does not amount to overruling or modifying that case. It leaves untouched the decision of the *Binney* case that the discrimination made by the statute there involved was arbitrary and not based upon a reasonable distinction, and distinguished the case then before the court on the ground that the New York statute was not open to this objection.

5. In the present case the constitutional objection to the aggregation of property and interests therein, which was the ground of the decision in the *Binney* case, is avoided. The legacy and succession taxes upon the successions by the children of Mrs. Meyer to property over which she had a power of appointment, created by the will of her father, who died in 1874, by reason of the nonexercise of the power of appointment, were certified by the commissioner without the property and interests therein to which each of the children so succeeded being aggregated with the individual property of Mrs. Meyer which passed to each child by her will. Whether or not there is constitutional objection to imposing a legacy and succession tax upon such a succession upon the nonexercise of a power without aggregation of property and interests therein apparently was not decided by the Supreme Court of the United States in the *Binney* case. But whatever constitutional principles may be involved in determining the validity of such a legacy and succession tax without the aggregation of property and interests therein, the validity of such a tax without the aggregation of property and interests therein depends in part, at least, upon the interpretation of the statute imposing taxes upon succession to property by reason of the nonexercise of powers, that is, G. L. (Ter. Ed.) c. 65, § 2, embodying by reference the provisions of § 1 of that statute.

The underlying principle of G. L. (Ter. Ed.) c. 65, § 2, is that, with respect to powers of appointment within its scope, the appointive property shall be treated for purposes of

legacy and succession taxation as if the donee of the power was the owner of such property and his death was the generating source of the succession, and that a succession resulting from the exercise or nonexercise of the power shall be taxed under § 1 of the chapter in the same manner, at least as to the amount of the tax, as successions to property of the owner thereof by the will of such owner. The "test to be applied to determine whether property passing by the exercise of a power of appointment is or is not subject to an inheritance tax under St. 1909, c. 527, § 8 [now G. L. (Ter. Ed.) c. 65, § 2], is this: Would the property in question have been subject to an inheritance tax if it had been the property of the donee of the power and had passed by way of devise or legacy under his will?" *Clark* v. *Treasurer & Receiver General*, 218 Mass. 292, 293. See *Gardiner* v. *Treasurer & Receiver General*, 225 Mass. 355, 362, 372. Compare *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600, 602.

The legacy and succession taxes imposed by said § 1, as amended, are imposed upon successions to near relatives as well as upon successions to remote relatives and to strangers. And these taxes are imposed at varying rates depending, in part, upon the relationship of the beneficiary to the former owner of the property and, in part, upon the value of the property or interests therein passing to the beneficiaries respectively, whatever the form of the taxable succession. The applicable rates are dependent upon a combination of these two factors. Exemptions also are determined by a combination of these two factors. And for the purpose of determining the value of the property and interests therein upon which the exemptions and the rates of tax, in part, depend, it is provided by said § 1, as amended, that "All property and interests therein which shall pass from a decedent to the same beneficiary by any one or more of the methods hereinbefore specified and all beneficial interests which shall accrue in the manner hereinbefore provided to such beneficiary on account of the death of such decedent shall be united and treated as a single interest for the purpose of determining the tax hereunder," a provision that was first enacted as an amendment to G. L. c. 65, § 1, by

St. 1924, c. 128, in precisely the same terms.  See *Ames* v. *Commissioner of Corporations & Taxation*, 269 Mass. 352, 354–355.  But the principle embodied in this amendment was law before its enactment, as a matter of interpretation of said § 1.  *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504, 510.  *Pratt* v. *Dean*, 246 Mass. 300, 308–309. In the latter case the court said: "The meaning of the statute is that the aggregate amounts passing under the instruments of trust [made or intended to take effect upon the death of the grantor] and under the will [of the grantor] shall be taken together as a unit in calculating the exemption and the tax. . . . The decisive factors established by the statute are the event by the happening of which the property passes and the time of the passing of the property.  These are the same in the case at bar.  The particular source from which the property thus passing may come, if within the sweep of the statute and from the same benefactor, is not of significant consequence. . . . The dominant purpose manifested by the statute is that the aggregate of property or property interests passing to another from one benefactor on his death, whether by will or other donative instrument, shall be treated as a single subject of the excise tax.  If this were not so, the purpose of a graduated tax, increasing with the value of the property or interest passing, and with exemptions, could be entirely frustrated by the simple device of splitting a large estate into small parts by trusts and deeds and other instruments of gift, each passing property or property interests not in excess of the exemption."

Clearly it was the legislative intention disclosed by G. L. (Ter. Ed.) c. 65, § 2, that, for the purposes of the legacy and succession taxes imposed by this section, the donee of a power of appointment within the scope of the section should be treated as the owner of the appointive property, not only for the purpose of determining whether the property — if within the jurisdiction of the Commonwealth, see *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600 — is subject to legacy and succession taxes (*Clark* v. *Treasurer & Receiver General*, 218 Mass. 292, 293), but also for the purpose of determining exemptions and rates of tax.  If this were not

true, a succession in the case of the exercise of a power would not be treated as "a disposition of property by the person exercising such power, taxable under section one, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by the donee by will," and a succession in the case of the nonexercise of a power would not be treated as "a disposition of property taxable under section one . . . as though the persons thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power." The provisions of § 1 applicable to successions "by will" are thus made applicable to successions of the kind described in § 2.

6. The legacy and succession taxes here involved were not determined in accordance with G. L. (Ter. Ed.) c. 65, § 1, as amended, for the method thereby prescribed for determining rates of tax was not followed since, although individual property of Mrs. Meyer passed to her children by her will, the principle of aggregation of property and interests therein was not applied — a principle that under the decision of *Binney* v. *Long*, 299 U. S. 280, could not constitutionally be applied — and the legacy and succession taxes certified and paid were computed solely on the basis of the property and interests therein to which the children of Mrs. Meyer succeeded by reason of her failure to exercise her power of appointment by the will of her father. The question is thus presented whether, since the principle of aggregation of property and interests therein could not constitutionally be applied, the statute is to be interpreted as imposing legacy and succession taxes without the application of the principle of aggregation of property and interests therein.

We are of opinion that G. L. (Ter. Ed.) c. 65, § 2, in substance incorporating the provisions of § 1, cannot be so interpreted. The effect of disregarding the principle of aggregation of property and interests therein — which is embodied in said § 2 by the reference to the provisions of said § 1 — by reason of the unconstitutionality of the principle as

applied to cases like the present case within the terms of said § 2, is not to exclude from taxation property that cannot constitutionally be taxed. The provision of the statute held unconstitutional by the Supreme Court of the United States in *Binney* v. *Long*, 299 U. S. 280, relates solely to the method by which the legacy and succession taxes are determined. Since the legacy and succession taxes imposed by said § 2 by reference to said § 1 are imposed at graduated rates depending, in part, upon the amount of the property and interests therein passing to each beneficiary, disregard of the principle of aggregation of property and interests therein would affect the statutory method of determining the amount of such legacy and succession taxes and would, in effect, substitute a different method of determining the amount of such legacy and succession taxes from that prescribed by the statute. Disregard of this principle of aggregation does not amount to cutting out of the statute a severable part thereof leaving the remainder of the statute intact. The principle of aggregation of property and interests therein permeates the entire provision for the determination of rates of tax. Disregard of this principle of aggregation leaves the statute without any applicable provision express or implied for determining such rates of tax. And a provision for such determination different from that provided for by the statute cannot be read into the statute by interpretation.

The legacy and succession taxes here involved obviously were based upon reading into the statute a provision that, for the purpose of determining rates of tax, only the appointive property passing by reason of the nonexercise of the power of appointment to the children, respectively, of the donee was to be considered. But there is no basis for reading such a provision into the statute. Whatever provision the Legislature might have made if it had known that the application of the principle of aggregation of property and interests therein to a case like the present was unconstitutional, there is nothing in the statute that discloses any intention on the part of the Legislature as to the method to be used in determining the legacy and succession taxes when the statutory method involving aggregation of property and

interests therein cannot constitutionally be followed. While doubtless the statute is to be interpreted — so far as possible — on the assumption that the Legislature did not intend to embody therein an unconstitutional provision (see *Commonwealth* v. *New England Transportation Co.* 282 Mass. 429, 437), the assumption cannot be carried to the extent of substituting for the unconstitutional provision a materially different provision that has no legislative sanction. However probable it may be that if the Legislature had known that the determination of the legacy and succession taxes in cases within the scope of said § 2, in accordance with the principle of aggregation of property and interests, was unconstitutional it would have provided for such determination upon the basis of the appointive property and interests therein independent of other property and interests therein passing or accruing to the same beneficiaries, the statute does not justify the conclusion that it has done so.

The case in this aspect is governed by *Harrison* v. *Commissioner of Corporations & Taxation*, 272 Mass. 422. That case arose under G. L. c. 62, § 10, providing in part for an income tax upon "income received by estates held in trust by trustees, any one of whom is an inhabitant of the commonwealth." There were three trustees, one of whom was a resident of the Commonwealth, and the other two were nonresidents. The court said that the "language of § 10 is broad enough to include taxation on income in the circumstances here in issue; 'But it is a rule of law that a statute which would be unconstitutional as applied to a certain class of cases, and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature.' Knowlton, C.J. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 241. *W. & J. Sloane* v. *Commonwealth*, 253 Mass. 529, 534 and cases cited" (page 426). But the court held that the fact that one of the three trustees was a resident of the Commonwealth would not support a tax on the entire income of the trust. In answer to the argument that "if the tax is bad to the extent

that the nonresident trustees had an undivided part interest, then it is valid upon the proportion of the income attributable to the resident trustee," the court said (page 431): "This contention cannot be supported. Manifestly that situation was not before the mind of the Legislature in enacting § 10. It was not framed to cover such facts. Its words are not susceptible of that construction. So to interpret the statute would be to supply something not in it rather than to interpret its words. We cannot go so far. We can construe the law only as it was promulgated. *Arruda v. Director General of Railroads,* 251 Mass. 255, 263. To adopt this contention would be 'legislative work beyond the power and function of the court.' *Hill* v. *Wallace,* 259 U. S. 44, 70. It would in substance and effect be 'to make a new law, not to enforce an old one. This is no part of our duty.' *United States* v. *Reese,* 92 U. S. 214, 221."

The result here reached is not affected by the fact that G. L. (Ter. Ed.) c. 65, § 2, was originally enacted — by St. 1909, c. 527, § 8 — after G. L. (Ter. Ed.) c. 65, § 1, in its original form was enacted — by St. 1907, c. 563, § 1. The case of *Binney* v. *Long,* 299 U. S. 280, whatever its practical effect, did not purport to hold § 2 unconstitutional in all respects but merely held unconstitutional the provision of § 1 embodied in § 2 for the aggregation of property and interests therein. If § 2 is unconstitutional in all respects — as we need not decide — of course the legacy and succession taxes here in question cannot be sustained thereunder. But even if the section is not unconstitutional in all respects the fact that it was originally enacted after the original enactment of § 1 furnishes no ground for the severance of the unconstitutional feature of § 2 embodied therein by reference to the provisions of § 1. Nor does the fact that the principle of aggregation of property and interests therein was first expressly embodied in said § 1 by St. 1924, c. 128, furnish a ground for such a severance and for the determination of legacy and succession taxes under § 2 by a different method from that prescribed by said § 1 involving the principle of aggregation of property and interests therein. Even if the decision in the *Binney* case should be

regarded as a decision that the amendment of § 1, relating to the aggregation of property and interests, made by St. 1924, c. 128, was unconstitutional, as applied to cases within the scope of § 2, leaving § 1 unaffected by this amendment, the principle of aggregation of property and interests therein would remain an inherent part of said § 1, in accordance with the decision in *Pratt* v. *Dean,* 246 Mass. 300, and the difficulty, herein pointed out, of eliminating this principle from the method of determining legacy and succession taxes and substituting a different method of determining such legacy and succession taxes would not be avoided.

We conclude, therefore, that, for the reason here stated, the legacy and succession taxes here in question cannot be sustained under G. L. (Ter. Ed.) c. 65, § 1, as amended, considered in connection with § 2 of the chapter. And it is unnecessary to decide whether for any other reason these legacy and succession taxes cannot be sustained under said § 1 considered in connection with said § 2.

It follows that the legacy and succession taxes certified and paid "on legacies, devises or distributive shares in the Trust under will of Charles H. Appleton for the benefit of Alice A. Meyer, (donee of the power) late of Hamilton," were illegally exacted and a decree must be entered that these legacy and succession taxes be wholly abated. G. L. (Ter. Ed.) c. 65, § 27. Since the matter of interest is covered in express terms by G. L. (Ter. Ed.) c. 65, § 27, it will be unnecessary to deal with this matter in the decree. See *Flint* v. *Commissioner of Corporations & Taxation,* 312 Mass. 204, 213.

*Ordered accordingly.*